**In the Matter of the CARE AND TREATMENT OF Michael G. NORTON, Appellant.**

No. SC 85538.

Supreme Court of Missouri, En Banc.

Dec. 23, 2003.

Modified Concurring Opinion Jan. 27, 2004.

Emmett D. Queener, Public Defender, Columbia, Nancy L. Vincent, Public Defender, St Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., James H. Klahr, Asst. Atty. Gen., Steven C. Reed, Asst. Atty. Gen., Jefferson City, for Respondent.

RONNIE L. WHITE, Chief Justice.

## I.

The State of Missouri petitioned the probate division of the circuit court seeking to confine Mr. Norton as a sexually violent predator (SVP).[1] The court found probable cause to believe that Mr. Norton might be a SVP, and following a jury trial he was committed to the Department of Mental Health (DMH) for control, care, and treatment as a SVP. Mr. Norton appealed claiming due process and equal protection violations, and the Court of Appeals, Eastern District, transferred the case to this Court pursuant to article V, section 11.

## II.

■ Mr. Norton asserts that he was denied due process for not being advised of his right to counsel during his evaluation for the "End of Confinement" report prepared pursuant to section 632.483.[2] Mr. Norton argues that section 632.492 guarantees that any person subject to the SVP evaluation "shall be entitled to assistance of counsel" during his or her interview because the evaluation is part of the "proceedings pursuant to sections 632.480 to 632.513."

■ "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to the intent if possible, and to consider the words in their plain and ordinary meaning."[3] The term "proceeding," in the context of legal action, means "the course of procedure in a judicial action or in a suit in litigation; legal action; a particular action at law or case in litigation."[4] A "proceeding" refers to a judicial action,[5] and the SVP proceeding is a statutorily created civil action.[6]

Rule 53.01, entitled "Commencement of Civil Action" states, "A civil action is commenced by filing a petition with the court." Mr. Norton's due process right to the assistance of counsel vested at the time the Attorney General filed a petition with the probate division pursuant to section 632.486. This initiated the "proceedings" pursuant to sections 632.480 to 632.513. There was no violation of due process rights when Mr. Norton was interviewed in the absence of legal counsel for the end of confinement report, because this evaluation was not part of the proceedings pursuant to sections 632.480 to 632.513.

---

1. Sections 632.480 to 632.513. All statutory references are to RSMo 2000 unless otherwise noted.

2. Mo. Const. article I, section 10.

3. *Landman v. Ice Cream Specialties, Inc.,* 107 S.W.3d 240, 2003 WL 21386324*10 (Mo. banc 2003).

4. Webster's Third New International Dictionary, Unabridged, Second College Edition, 1807 (1966).

5. *Brown v. Whitaker* 926 S.W.2d 1, 4 (Mo. App.1996).

6. *In re Salcedo,* 34 S.W.3d 862, 867 (Mo.App. 2001) Superceded by statute on other grounds in *Barlow v. State,* 114 S.W.3d 328, 331 (Mo. App.2003).

## III.

■ Mr. Norton also raises three equal protection claims in association with his civil commitment proceeding. "In deciding whether a statute violates the Equal Protection Clause, this Court engages in a two-part analysis. The first step is to determine whether the classification operates to the disadvantage of some suspect class or impinges upon a fundamental right explicitly or implicitly protected by the Constitution. If so, the classification is subject to strict scrutiny and this Court must determine whether it is necessary to accomplish a compelling state interest. If not, review is limited to determining whether the classification is rationally related to a legitimate state interest." [7]

■ "A suspect classification exists where a group of persons is legally categorized and the resulting class is 'saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process.' " [8] While sexually violent predators are not members of a suspect class,[9] civil commitment of persons so classified impinges on the fundamental right of liberty.[10] Strict scrutiny review applies to Mr. Norton's equal protection claims. "To pass strict scrutiny review, a governmental intrusion must be justified by a 'compelling state interest' and must be narrowly drawn to express the compelling state interest at stake." [11]

## IV.

■ Mr. Norton asserts that he was denied equal protection because being denied counsel during his end of confinement interview creates differential treatment compared to other persons rendered dangerous by a mental disorder who are immediately entitled to counsel under sections 632.300 to 632.325. The State correctly points out, however, that this argument is fatally flawed because even assuming, arguendo, that other persons rendered dangerous by a mental disorder compose a comparable class to that of the SVP, there is no differential treatment. The statutory scheme for the described offenders provides counsel in the same time frame as that of the SVP,

---

7. *Etling v. Westport Heating & Cooling Services, Inc.,* 92 S.W.3d 771, 774 (Mo. banc 2003); *Missourians for Tax Justice Educ. Project v. Holden,* 959 S.W.2d 100, 103 (Mo. banc 1997). See also *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 17, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Maher v. Roe,* 432 U.S. 464, 470, 97 S.Ct. 2376, 53 L.Ed.2d 484 (1977). Suspect classes include such classes as race, national origin or illegitimacy. *Id.*

8. *Holden,* 959 S.W.2d at 103; *Rodriguez,* 411 U.S. at 28, 93 S.Ct. 1278.

9. *State ex rel. Nixon v. Askren,* 27 S.W.3d 834, 842 (Mo.App.2000).

10. Freedom from physical restraint is a fundamental right. *Heller v. Doe,* 509 U.S. 312, 113 S.Ct. 2637, 125 L.Ed.2d 257,

337 (1993); *Vitek v. Jones,* 445 U.S. 480, 491–92, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980); *Foucha v. Louisiana,* 504 U.S. 71, 86, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). Missouri's General Assembly evidently conferred additional rights on suspected predators in its civil commitment statutes because, "even in civil proceedings for involuntary commitment," the person whose commitment is sought has a "liberty [interest] protected by the Due Process Clause from arbitrary governmental action." *Salcedo,* 34 S.W.3d at 867, citing to, *Kansas v. Hendricks,* 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997).

11. *Herndon v. Tuhey,* 857 S.W.2d 203, 211 (Mo. banc 1993), citing to *Roe v. Wade,* 410 U.S. 113, 155, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). *See also Aptheker v. Secretary of State,* 378 U.S. 500, 508–09, 84 S.Ct. 1659, 12 L.Ed.2d 992, (1964).

after probable cause for detention and evaluation has been determined, and after the person has become subject to the court as a party to a petition or application.

## V.

■ Mr. Norton's second equal protection claim is that the court erred by not allowing consideration of less restrictive alternatives to the "secure confinement" of those adjudicated as sexually violent predators (SVPs).[12] Appellant maintains that two other similar classes of individuals facing civil commitment are allowed this consideration for detention and treatment: (1) those persons presenting a risk of serious harm to himself or others pursuant to section 632.355; and (2) those persons tried and acquitted on the basis of a mental disease or defect pursuant to section 552.040.4. Mr. Norton directs this Court to the state of Washington's SVP laws allowing alternatives in confinement under what he believes is the constitutionally correct statutory scheme for detention and treatment of SVPs.[13]

The State argues that SVPs are not a suspect class and that there is a rational basis for maintaining individuals classified as SVPs in secure confinement because of the high incidence of recidivism of sex offenders. The State also contends that the annual review process, provided under section 632.498, allowing for discharge balances Mr. Norton's rights with that of the need to protect the public.

While the State fails to argue the correct standard of review, this Court finds secure confinement of persons adjudicated to be SVPs, as provided in sections 632.480 to 632.513, is narrowly tailored to serve a compelling state interest. The State has a compelling interest in protecting the public from crime.[14] This interest justifies the differential treatment of those persons adjudicated as sexually violent predators when, as determined by the legislature, such mental abnormality makes them distinctively dangerous because of the substantial probability that they will commit future crimes of sexual violence if not confined in a secure facility.[15]

The SVP act erects an elaborate, step-by-step procedure, conferring on the suspected predator a number of rights enjoyed by defendants in criminal prosecutions. Those rights include:

the right to a preliminary determination by the probate judge of whether probable cause exists to believe the suspected predator is a sexually violent predator (section 632.489.1); the right to contest an adverse probable cause determination at a hearing (section 632.489.2); the right to appear in person and be represented by counsel at the hearing (sections 632.489.2 and .3(1)); the right to present evidence and cross-examine adverse witnesses (section 632.489.3(2) and .3(3)); the right to a jury trial (section 632.492); the right to require the AG to prove beyond a reasonable doubt that the suspected predator is a sexually violent predator (section 632.495); and the

---

12. See section 632.495.

13. See *In re Young,* 122 Wash.2d 1, 857 P.2d 989 (1993).

14. See *Foucha,* 504 U.S. at 81, 112 S.Ct. 1780; *De Veau v. Braisted,* 363 U.S. 144, 155, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960).

15. Section 632.480(5). *See also State v. Post,* 197 Wis.2d 279, 321–23, 541 N.W.2d 115 (1995). A "mental abnormality" is defined as "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others." See Section 632.480(2).

right to have such determination made by unanimous verdict (section 632.495).[16]

If ruled to be a SVP, the person is committed to the DMH, which designates the secure facility to provide for the control, care and treatment of the individual.[17] Annual examinations and court review are mandated to determine if the person's mental abnormality has improved with treatment and if the individual remains likely to engage in violent sexual acts if released.[18] The State, again, has the burden of proving beyond a reasonable doubt that the person's mental abnormality has not improved and that it is not yet safe to release the SVP.[19]

Given the additional procedural safeguards afforded by Missouri's civil confinement statutes, and the multiple opportunities for court review and dismissal from secure confinement, this Court finds that Missouri's statutory scheme is narrowly tailored to promote the compelling interest of protecting the public from this small percentage of offenders.

## VI.

 In his final equal protection claim, Mr. Norton claims disparate treatment with the manner in which individuals are evaluated when suspected of being a SVP prior to the filing of the petition for confinement. At the time of Mr. Norton's confinement proceedings, persons suspected of being a SVP, not already confined, received their initial evaluation from a licensed psychiatrist or psychologist pursuant to 632.484, whereas, under section 632.483, he, being already confined, received his initial evaluation from a licensed social worker.[20]

Mr. Norton maintains that had he not been in custody, a determination by a psychiatrist or psychologist would have been required prior to the Attorney General being able to file the commitment petition. Mr. Norton asserts that the first psychiatrist to examine him, who was with the DMH, did not find he met the definition of a SVP. Consequently, according to Mr. Norton, had he received this examination first the State would have been unable to initiate the civil commitment proceedings against him.

The State responds by asserting that Mr. Norton failed to meet his burden to demonstrate that the state lacks a rational basis for allowing a professional other than a psychiatrist or psychologist to conduct the initial interview and evaluation pursuant to section 632.483.[21] As noted earlier,

16. *Salcedo*, 34 S.W.3d at 867.

17. Section 632.495.

18. Section 632.498. An individual so committed can also petition the court at any time for discharge.

19. Section 632.498.

20. Section 632.483 was amended, effective August 28, 2002 by S.B. 969 to require an initial determination by a psychiatrist or a psychologist, as defined in section 632.005, as to whether or not the person meets the definition of sexually violent predator. Section 632.483.2(3).

21. The State proffers three reasons as to why there is a rational distinction between these two sections regulating the civil commitment of SVPs. First, those persons subject to review under section 632.483 are currently under the jurisdiction of the DMH and not suddenly being taken into custody as those subject to section 632.484. Secondly, the State maintains a clinical licensed social worker is competent to make the initial finding that a person "may" meet the definition of a "sexually violent predator." Finally, the State asserts that a person subject to section 632.483 has generated other institutional records by virtue of his or her tenure with the department of corrections and/or the DMH whereas a person committed under the provisions of section 632.484 may not have additional documentation for review. This Court, however, determines that strict scrutiny applies.

however, Mr. Norton's equal protection claim receives strict scrutiny review since the civil confinement statutes at issue have implicated the fundamental right to liberty. Nevertheless, this Court is not persuaded by Appellant's argument.

The gravamen of Appellant's equal protection claim concerns the timing of his evaluation by a qualified psychiatrist or psychologist. Both classes of persons subject to the civil commitment statutes, however, those already in confinement and those who are not, must receive the evaluation of a qualified professional prior to their trial, and this evidence is presented to the court or jury. Additionally, section 632.489 allows for detained persons to be examined by a psychiatrist or psychologist of their own choosing in addition to the professional evaluation mandated by the DMH. All persons detained and evaluated under Missouri's SVP statutory scheme are equally evaluated prior to the determination of their status as to whether or not they meet the definition of a SVP. There is no equal protection violation in association with the timing of the evaluation provided by the psychiatrist or psychologist.

## VII.

The judgment is affirmed.

BENTON, LAURA DENVIR STITH, PRICE, TEITELMAN and LIMBAUGH, JJ., concur.

MICHAEL A. WOLFF, J., concurs in separate opinion filed.

MICHAEL A. WOLFF, Judge, concurring.

**Introduction**

Under a statute precariously dependent on the inexact science of psychiatry, persons who may be threats to public safety are labeled "sexually violent predators" so they can be confined in a "secure facility."

If confinement were merely additional punishment for the horrible crimes for which Michael G. Norton and Nelvin Spencer (the appellant in *In the Matter of the Care and Treatment of Nelvin Spencer*, SC85491, 123 S.W.3d 166 decided with this case) already have been punished, further confinement would violate the Double Jeopardy and Ex Post Facto clauses of the United States Constitution.

But, these are civil commitments. The purposes of civil commitments are incapacitation—to protect society or the patient—and treatment. The idea behind such confinements is that a patient is "sick" and dangerous, that he must be locked up to be treated, and that when he gets "well," he will be released.

While the statutory scheme is constitutional as written, I am doubtful about its constitutionality as applied. I concur in these cases, however, because I believe we should defer the constitutional questions to another day after seeing how the "sexually violent predator" law works in practice. The practices of the state over the next few years will show whether there is a meaningful attempt to treat those previously determined to be sick and dangerous, or whether these offenders will simply be warehoused without treatment and without meaningful efforts to re-integrate them into society.

For those labeled as "sexually violent predators," the question is whether this confinement is likely to be a life sentence, without meaningful treatment, and without an attempt to tailor the infringement on liberty to that needed to effect treatment and to protect society.

It may well be that a system has been created that will stand as a rebuke to the fundamental concept of due process of law without necessarily making society safer.

There is no doubt that the crimes these men[1] have been convicted of are horrible. But after they have served their sentences for their reprehensible acts, they face indefinite confinement—not for their acts, but for what mental health experts think may be in their thoughts; not for what they have done, but for what we are afraid they might do.

## The United States Supreme Court's Principles

The United States Supreme Court has upheld civil commitment of sexually violent predators in a series of closely divided cases.[2] These decisions seem to indicate general agreement that a state may confine persons who, "by reason of a mental disease or mental abnormality, constitute a real, continuing, and serious danger to society...." *Kansas v. Hendricks*, 521 U.S. at 372, 117 S.Ct. 2072 (Kennedy, J. concurring). These preventive detention schemes will be upheld where: "(1) 'the confinement takes place pursuant to proper procedures and evidentiary standards,' (2) there is a finding of 'dangerousness either to one's self or to others,' and (3) proof of dangerousness is 'coupled ... with the proof of some additional factor, such as a 'mental illness' or 'mental abnormality.' " *Kansas v. Crane*, 534 U.S. at 409–410, 122 S.Ct. 867.

Confinement cannot be a mere extension of punishment. *Kansas v. Hendricks*, 521 U.S. at 372, 117 S.Ct. 2072 (Kennedy, J. concurring). These men, after all, have already been convicted and punished. The goals of civil commitment are incapacitation and treatment, while the primary goals of criminal punishment are retribution and general deterrence. *Kansas v. Hendricks*, 521 U.S. at 361–362, 117 S.Ct. 2072. If, as stated, the effect of the statute were punitive, confinement would violate the Ex Post Facto and Double Jeopardy Clauses of the United States Constitution.[3] These constitutional rights are meant to protect every offender, no matter how reprehensible the offense.

### Constitutional Safeguards?

The reprehensible nature of the offenses makes observance of constitutional safeguards very difficult. The elephant in the

---

1. All but a handful of the sex offenders confined as sexually violent predators nationwide are men. The only woman in Missouri to be confined as a sexually violent predator was recently released from confinement. *In the Matter of the Care and Treatment of Angela M. Coffel*, 117 S.W.3d 116 (Mo.App.2003). The court of appeals reversed the probate division's determination that Coffel was a sexually violent predator, noting that there is very little known about recidivism for female sex offenders and the data that exist suggest the rate is very low. The studies regarding male offenders are not applicable to female offenders because the reasons men and women commit sex offenses are fundamentally different.

2. *Kansas v. Hendricks*, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), *Seling v. Young*, 531 U.S. 250, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001), *Kansas v. Crane*, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002) and *Allen v. Illinois*, 478 U.S. 364, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986).

3. The provision in Amendment V to the United States Constitution known as the Double Jeopardy Clause states: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." The Court has interpreted this to prohibit a state from "punishing twice, or attempting a second time to punish criminally, for the same offense." *Witte v. United States*, 515 U.S. 389, 396, 115 S.Ct. 2199, 2204, 132 L.Ed.2d 351 (1995).

The provision in art. I, sec. 10 of the United States Constitution known as the Ex Post Facto Clause prohibits a state from passing any *ex post facto* law. An *ex post facto* law is "a law that changes the punishment or inflicts a greater punishment than the law annexed to the crime when it was committed." BLACK'S LAW DICTIONARY 580 (6th ed.1990).

room, to use a common metaphor, is that Mr. Norton and Mr. Spencer have been convicted of sexual offenses involving children—Mr. Norton pled guilty to first-degree child molestation and Mr. Spencer pled guilty to one count of statutory rape in the first degree. State corrections employees who screen these cases, prosecutors who seek commitments, psychiatrists and other mental health professionals who evaluate these prisoners, judges, and juries cannot ignore the elephant in the room or avoid the reaction it evokes.

Once the state decides to proceed to commit one of these offenders, it can hardly lose. If the state psychiatrist cannot confidently state that an offender is a sexually violent predator, the state may shop around for an expert, even from another state.

The fact that juries regularly find convicted sex offenders to be sexually violent predators should come as no surprise. Even where there is doubt about whether the offender has a mental abnormality, what juror wants to free someone who may someday molest another child? The state is, of course, required to prove its case for commitment "beyond a reasonable doubt." But in this context, is this much of a safeguard?

### Psychiatry and Predictions

Psychiatry is relied upon for answers and for certainty. The statutory scheme is built upon the unrealistic premise that there are "mental abnormalities" that are reliably diagnosable and that human behavior can be predicted. However, most psychiatrists and psychologists say they can never reliably predict recidivism among sex offenders; Justice Department analyses reportedly show recidivism is low-

er among sex offenders than in the general criminal population.[4]

The American Psychiatric Association has called sexually violent predator statutes "a serious assault on the integrity of psychiatry, objecting to the use of statements made in psychotherapy as evidence against patients, and the use of the mental health system for people who are not mentally ill."[5] In the association's *amicus curiae* brief in *Kansas v. Crane*, the association based its standing on its "strong interest in ensuring that psychiatric hospitalization be reserved for the proper care and treatment of patients, not as a means of preventive detention that simply substitutes for the criminal justice system." Dr. Paul Appelbaum, a past president of the American Psychiatric Association, expressed concern that "the United States Supreme Court … ratified a vague standard that gave wide discretion to prosecutors and judges."[6]

The vagueness is inherent in the use of the term "mental abnormality," which is not a medical concept. It does not appear, for instance, in the Diagnostic and Statistical Manual (DSM IV–TR) of the American Psychiatric Association. The association's Task Force on Sexually Dangerous Offenders objects to the sexually violent predator laws as an attempt to use psychiatry to "effect nonmedical societal ends."

What is a mental abnormality? Is it a physical construct that can be seen in the brain upon radiological examination? Or is it a metaphor, perhaps implying the existence of a physical or structural abnormality that represents some pattern of thinking and volition? And if a mental abnormality is a metaphor, is there an

---

4. Laura Mansnerus, *Questions Rise Over Imprisoning Sex Offenders Past Their Terms,* New York Times, November 17, 2003.

5. *Id.*

6. *Id.*

equally powerful metaphor for describing when the abnormality has changed so that the man is "normal" again?

There is a belief, not well supported by scientific evidence, that some mental abnormalities involving sexual behaviors are incurable. This is particularly true of the condition called "pedophilia." [7] The common belief is "once a pedophile, always a pedophile." Psychiatric experts, in fact, disagree whether pedophilia is a mental disorder and whether it is treatable.[8] "Psychiatrists or other professionals engaged in treating pedophilia may be reluctant to find measurable success in treatment even after a long period and may be unable to predict that no serious danger will come from release of the detainee." *Kansas v. Hendricks*, 521 U.S. at 372, 117 S.Ct. 2072 (Kennedy, J. concurring).

In Missouri, a man convicted of a sex offense must complete the MOSOP (Missouri Sexual Offender Program) in prison before he can be considered for parole. Failure to successfully complete MOSOP triggers the statutory process leading to civil commitment as a sexually violent predator. An end of confinement report is required for each inmate who has been convicted of one of the offenses enumerated in section 632.480(4) and "fails" MOSOP. The end of confinement report identifies individuals who "may meet the criteria of a sexually violent predator", compelling written notice to the Attorney General pursuant to section 632.483—the first step in the proceedings necessary for civil commitment as a sexually violent predator.

Part of the MOSOP treatment, which is well regarded nationally, requires the offender to admit his guilt and to show remorse. This may present a major quandary for the convict who continues to claim innocence. If he admits guilt, though he has none, he may succeed in the program but he may still be referred for commitment. Or, if he continues to deny guilt, he will face commitment, even though he may not have done the deeds for which he was convicted. In reality, most forensic studies have found no link between denial of responsibility for the offense or hostility to treatment and future crimes.[9] Furthermore, many psychiatric experts feel that involuntary treatment is not a solution because it does not reduce recidivism rates.[10]

To its credit, Missouri's prison-based MOSOP apparently does focus on behavior, not just the offender's thoughts. When this punishment-based treatment is transported from corrections to the field of mental health and civil commitment, the concepts become muddled because the

---

7. The DSM IV TR classifies the sexual disorder pedophilia as a paraphilia (paraphilias are characterized by recurrent, intense, sexual urges, fantasies, or behaviors that involve unusual objects, activities, or situations and cause clinically significant distress or impairment in social, occupational, or other important areas of functioning) involving sexual activity with a prepubescent child. The diagnostic criteria for pedophilia are: A) over a period of at least six months, recurrent, intense sexually arousing fantasies, sexual urges, or behaviors involving sexual activity with a prepubescent child or children; B) the person has acted on these sexual urges, or the sexual urges or fantasies caused marked distress or interpersonal difficulty; and C) the person is at least 16 years old and at least 5 years older than the child or children in Criterion A.

8. Robert Bilbrey, *Civil Commitment of Sexually Violent Predators: A Misguided Attempt to Solve a Serious Problem*, Journal of the Missouri Bar, (Nov/Dec1999).

9. Mansnerus, *supra* at note 3.

10. Amy Jurgenmeier, *Promises to Keep: The Continued Denial of Constitutional Rights to Sexually Violent Predators*, 41 Washburn Law Journal, 667, 682 (2002).

factfinders are trying to predict behavior based on what is in a person's thoughts. The sexually violent predator statute requires that the mental abnormality make it difficult to control one's behavior. Section 632.480(2); *In the Matter of the Care and Treatment of Eddie J. Thomas,* 74 S.W.3d 789, 791 (Mo.2002). There may be some offenders, such as the inmate in *Kansas v. Hendricks* who said that at times he could not "control the urge" to molest children, and acknowledged that "the only sure way he could keep from sexually abusing children in the future was 'to die.'" 521 U.S. at 356, 117 S.Ct. 2072. Mr. Hendricks, appropriately enough, may never be released. Other sexual offenders may have less dramatic problems that can be treated effectively. Constitutionally protected liberty interests require the courts to sort these offenders out.

**Bad Behavior or Bad Thoughts?**

When dealing with predictions, the law becomes as confusing as psychiatry seems to be. If the problem is one of volition, it is not enough to say that a person has impulses or urges to engage in a particularly vile behavior. The issue for the criminal law is not whether a person has urges—after all, why should a free society care what a person is thinking?—but whether the person can control his behavior.

The "once a pedophile always a pedophile" believers may have a point. It may be true that a person who is sexually attracted to young children will always be so. But the question, for those who believe in due process of law, is whether the confinement for treatment is only of such nature and duration necessary to treat the person and to keep him from society until he can control his behavior.

**Life Sentences?**

When will these sexually violent predators be released?

The principal opinion notes that the statute requires an annual review and that a person labeled a sexually violent predator must be released when "the person's abnormality has so changed that the person is safe to be at large." Section 632.495. It may be difficult, however, to discern when "abnormal" has become "normal." In these cases, a "mental abnormality" has already been found to exist beyond a reasonable doubt.

How this review process will work, consistent with due process, remains to be seen. Missouri has not had this statute on the books for very long. The statute providing for civil commitment of sexually violent predators was enacted in 1998 and became effective January 1, 1999. To date, none of the 44 individuals committed pursuant to this statute has been released after review pursuant to the statute.

In civil commitment cases, the state must tailor its confinement to the least restrictive alternative. Sections 632.335.4 and 632.365. *See, Foucha v. Louisiana,* 504 U.S. 71, 79, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) (due process requires that the conditions and duration of confinement bear some reasonable relation to the purpose for which persons are committed). There is no such explicit requirement for the least restrictive alternative for persons committed as sexually violent predators nor is there a definition of "secure facility" as used in the statute.

Mr. Norton and Mr. Spencer claim that they are not afforded the same rights as, for example, psychotic and dangerous mental patients. They argue that this allegedly disparate treatment is a violation of the constitutional guarantee of equal protection as found in art. I, sec. 2 of the Missouri Constitution and the Fifth and Fourteenth Amendments to the United

States Constitution. *See, In re Young,* 122 Wash.2d 1, 857 P.2d 989 (1993).

**Least Restrictive Alternatives**

The review procedures found in Missouri's sexually violent predator law should be read to include the "least restrictive alternative" concept for sexually violent predator commitments. The statute's requirement of an annual review assures that the maximum amount of time an individual can be confined pursuant to a single judicial proceeding is one year. The standard of proof remains beyond a reasonable doubt for each subsequent commitment. When determining whether the purpose of the law is incapacitation and treatment rather than punishment, "[f]ailure to consider, or to use 'alternative and less harsh methods' to achieve a nonpunitive objective can help to show that the legislature's 'purpose' was to punish." *Kansas v. Hendricks,* 521 U.S. at 388, 117 S.Ct. 2072 (Kennedy, J. concurring) citing *Bell v. Wolfish,* 441 U.S. 520, 539, n. 20, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). If the purpose is shown to be merely punishment, the confinement is unconstitutional.

The statute under which these offenders are now confined is only five years old. This Court has quite recently upheld its validity. *Thomas,* 74 S.W.3d 789. Experience in applying the statute will show whether there are deficiencies that fall to the level of constitutional violations. There are two areas of particular concern:

1. Does the screening process for determining which sexual offenders are to be committed assure a medically valid and dispassionate evaluation? In determining the answer to this question, one might consider whether the treating psychiatrist's views are followed or whether the state is routinely seeking outside experts in an effort to keep these offenders confined.

2. Does the state review process for releasing those committed under the law, in the absence of a "least restrictive alternative" provision, strike the proper balance between the liberty interests of the individual and the safety interests of society?

Although there is not a specific "least restrictive alternative" requirement in the statute, nothing would appear to prohibit the use of conditional monitored releases and other alternative means of control or confinement that would facilitate job placements or other activities where the aim is to reintegrate the offender/patient into society. Section 632.495 provides that persons confined as sexually violent predators "shall be kept in a secure facility designated by the director of the department of mental health ..." The statute does not define "secure facility" so it seems to be up to the director of the department of mental health to determine what "facilities" are appropriate.

If the statute is read to mean that confinement is an all-or-nothing condition, there may be practical problems as well as constitutional problems. If the statute is read to prohibit less restrictive alternatives, not only equal protection issues but double jeopardy issues arise as well, because without the consideration of less harsh methods of confinement, the purpose of the confinement may be construed as punishment.

**How Will the Law Be Applied?**

This Court is foreclosed from considering the validity of the statute on its face based on *Hendricks* and its progeny, including this Court's decision in *Thomas.* But experience with the statute may ex-

pose serious constitutional problems. The goal of Missouri's sexually violent predator law is to target the offenders with a high probability of recidivism and those who have committed the most atrocious sex crimes.[11] Given the public's natural revulsion for all sex crimes, the temptation to apply the law indiscriminately must be resisted to avoid embarking on a collision course with due process.

Most importantly, the state must show through its confinement and treatment under the statute that the statute serves a proper non-punishment purpose. A principal premise of their confinement is treatment. If an inmate is at all susceptible to treatment, the state has a duty to provide that treatment. If the state simply warehouses these men, without appropriate treatment and without a meaningful means to achieve re-integration with society—rights that are accorded to other mental patients—their constitutional rights will be violated.

For now, I concur in the principal opinion. But if this statute is used simply to impose life sentences of confinement based upon a labeling of the inmates' thoughts, this Court will have a constitutional duty to take another look.

**11.** Laura Barnickol, *Missouri's Sexually Violent Predator Law: Treatment or Punishment?*, 4 Washington University Journal of Law & Policy 321, 336 (2000).