In the Matter of the Care and Treatment of Albert BERNAT, Appellant,

v.

STATE of Missouri, Respondent.

No. SC 87415.

Supreme Court of Missouri, En Banc.

June 30, 2006.

Emmett D. Queener, Office of the Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Trevor Bossert, Assistant Attorney General, St. Louis, for respondent.

LAURA DENVIR STITH, Judge.

Can the state draw an adverse inference against an alleged sexually violent predator when the latter cooperates with his doctors for purposes of diagnosis and treatment, but chooses not to testify at trial and the state declines to call him as a witness?

Sexually violent predator (SVP) proceedings are a special form of involuntary civil commitment. Other persons subject to involuntary commitment have a right to remain silent that is drawn from section 632.335.2(4), RSMo 2000.[1] Mr. Bernat argues it violates his rights under the equal protection clause not also to accord him a right to remain silent and to prohibit the state from commenting on his exercise of that right.

Because a finding that a person is an SVP results in deprivation of liberty, a fundamental right, the proceedings by which that liberty is restricted are subject to strict scrutiny, and limitations on the detainee's liberty rights should be narrowly tailored to serve a compelling state interest. The state has identified a compelling state interest in obtaining the cooperation and testimony of alleged SVPs such as Mr. Bernat so as to enhance the reliability of the fact-finder's decisionmaking. Here, however, the state chose not to call Mr. Bernat, instead arguing an adverse inference from his failure to testify. This does not further the compelling interest identified by the state and is not narrowly tailored to accomplish that purpose.

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

For these reasons, the trial court erred in permitting the state to argue an adverse inference from Mr. Bernat's decision not to testify. Reversed and remanded.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Albert Bernat pled guilty in 1986 to forcible rape and was sentenced to 15 years in prison. Mr. Bernat completed phases I and II of the Missouri Sexual Offender Program. As a result, he was entitled to early release and was paroled in 1992. In 1995, a woman he met in a bar accused him of raping her. A jury acquitted him of the criminal charge. The charge resulted in revocation of his parole for the 1986 rape, however, and he was returned to prison to finish his initial sentence.

Mr. Bernat was scheduled for release on December 13, 2000, having completed his entire sentence for the 1986 rape. Two days before the anticipated release, on December 11, 2000, the state filed a petition requesting that Mr. Bernat be found to be an SVP and involuntarily committed to the custody of the Department of Mental Health (DMH) for treatment. *See* secs. 632.480 to 632.513. The trial court held a probable cause hearing at which Mr. Bernat had the right to be represented by counsel, to present evidence on his behalf, to cross-examine witnesses, and to view and copy all petitions and reports in the court file, including the assessment of the multidisciplinary team. Sec. 632.489. The trial court found probable cause to believe Mr. Bernat was an SVP and scheduled his case for trial on the merits of the SVP issue.

Prior to trial, Mr. Bernat filed a pretrial motion asking that he be accorded the right to remain silent at trial and that the

state be precluded from calling him as a witness or from using his silence as evidence against him. The motion was overruled.

The case was initially tried in October 2001. Because the jury was unable to reach a unanimous verdict, as required by section 632.495, the trial court declared a mistrial. The second trial occurred in June 2003. The state did not call or attempt to call Mr. Bernat. It did present the testimony of psychiatrist Dr. Terry Davis and of licensed social worker Linda Kelly.[2] The latter offered her expert opinion that Mr. Bernat had paraphilia not otherwise specified that resulted in a desire not to injure women but to feel powerful and in control in his relationships with them.

Mr. Bernat did not testify in his own defense. He presented the testimony of Don Kannady, a private therapist for sex offenders with a master's degree in counseling, who testified Mr. Bernat was responsible and attended counseling. Mr. Bernat also presented the testimony of two security aids at his secure facility, who said he did not engage in inappropriate sexual or other behavior, and that of Dr. Richard Scott, unit director for forensic evaluations for DMH in St. Louis, who said that he did not suffer from a mental disorder that was responsible for his sexual offenses.

In the second trial the state argued in closing that Mr. Bernat's failure to testify provided a reason to doubt his claim that he had changed and no longer presented an undue risk of committing another sexually violent offense, stating, "Mr. Bernat changed? Did you get to judge his credibility about how he changed? Did he get up here and testify?" Mr. Bernat's coun-

---

**2.** As discussed in section III, Mr. Bernat objected to her qualifications to testify and filed a motion *in limine* to exclude her testimony, without success.

sel objected, stating, "In adversarial cases they can call him if they want [to impeach him]. He is as available to them as he is to us."

The state admitted, in a sidebar, "The issue is can we call him. Yes, sir, but if we don't call him, then there is an adverse inference. This is all about the jury who can consider the fact, because he was not even there. We could call him but that is not the point." The court then emphasized to the jury that the state "could have called Mr. Bernat as a witness," but also permitted the state to make its argument. The prosecutor continued, "I could have called him as a witness, but you know what, he hadn't told the truth about anything to his counselor or therapist or Dr. Scott or Dr. Davis or Linda Kelley. I'm not going to put a witness like that up there on the stand."

The prosecutor continued, "You haven't heard him get up here and seen him look you in the eye and tell you what he has changed." Mr. Bernat's counsel again objected, claiming, "The State is shifting the burden of proof. The State has the burden of proof. We don't have to prove anything. Now he is saying Mr. Bernat had to defend himself. . . ." The prosecutor countered, "[W]e presumed that he's going to show you he's changed, and he doesn't call his client to prove that. You can consider that as evidence."

The trial court overruled Mr. Bernat's objections. This jury unanimously found he was an SVP. The court entered judgment committing him to the custody of DMH for treatment. Sec. 632.498. After

opinion by the Court of Appeals, Eastern District, this Court granted transfer.[3] Mo. Const. art. V, sec. 10.

## II. STANDARD OF REVIEW

■ This Court determines issues of law *de novo*. *Delta Air Lines, Inc. v. Dir. of Revenue,* 908 S.W.2d 353, 355 (Mo. banc 1995). This Court reviews preserved objections to errors in closing argument under an abuse of discretion standard. *State v. Shurn,* 866 S.W.2d 447, 460 (Mo. banc 1993).

## III. EQUAL PROTECTION CHALLENGE

■ Mr. Bernat argues the trial court violated his equal protection rights by: (1) ruling that he had no right to remain silent even though such a right is accorded to other persons the state seeks to involuntarily civilly commit and (2) permitting the state to comment on his failure to testify once it chose not to call him as a witness.

■ Mr. Bernat does not claim that his right to remain silent arises under the Fifth Amendment. To the contrary, he recognizes that proceedings to determine whether a detainee is an SVP are not criminal, even though the predicate for such proceedings is the alleged SVP's prior commission of a sexually violent offense or a finding he is a sexual psychopath. The Fifth Amendment right against self-incrimination has application only to criminal proceedings. *Allen v. Illinois,* 478 U.S. 364, 368–74, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986).[4]

---

**3.** The Court of Appeals, Eastern District, initially transferred the case to this Court prior to opinion because it believed that the case involved a claim that the SVP statute was unconstitutional. Because Mr. Bernat's claim instead is that this Court must fill in the gaps in the statute by recognizing his right to remain silent and not to have an adverse

inference taken against him, the Court retransferred the case for initial determination by the court of appeals. *Bernat v. State,* 167 S.W.3d 717 (Mo. banc 2005).

**4.** There is no contention that Mr. Bernat would be prohibited from invoking his Fifth

He also acknowledges that in most civil proceedings one party is permitted to call the other as a witness,[5] and the right to argue an adverse inference from a party's failure to testify is recognized by case law. *Pasternak v. Mashak*, 428 S.W.2d 565, 568 (Mo.1967). But, Mr. Bernat argues, this is not just any civil proceeding. It is a form of involuntary civil commitment. Like other civil detainees alleged to be violent, the state wants to detain him to protect others from him and to treat his illness with the ultimate goal of securing his release once he no longer presents a danger to others.

While the predicate for his detainment is his previous commission of a sexually violent act, distinguishing him from most other civil detainees, the mere commission of a criminal act is not itself a disqualifier for the right to remain silent, since of course both the United States and Missouri constitutions provide those accused of crime with the right to remain silent. U.S. Const. amend. V; Mo. Const. art. I, sec. 19. Although he does not claim under those constitutional provisions here, he does claim that since all others accused of crime and all other persons subject to involuntary civil commitment in Missouri have the right to remain silent and not to have an adverse inference drawn against them for exercising that right, he has a right to be accorded that privilege also. Sec. 632.335.2(4).

■ Analysis of Mr. Bernat's argument begins with the United States Constitution, which provides, "No state shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the

equal protection of the laws." U.S. Const. amend. XIV. The Missouri Constitution similarly provides, "[A]ll persons are created equal and are entitled to equal rights and opportunity under the law." Mo. Const. art. I, sec. 2. This Court interprets the Missouri equal protection clause to be coextensive with that in the Fourteenth Amendment, *see Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822, 829 (Mo. banc 1991), and has long recognized it provides "equal security or burden under the laws to every one similarly situated; and that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or classes of persons in the same place and under like circumstances." *Ex parte Wilson*, 330 Mo. 230, 48 S.W.2d 919, 921 (1932).

■ This Court set out the test for considering a claim that the SVP statute violates detainees' equal protection rights in *In re Norton*, 123 S.W.3d 170 (Mo. banc 2003):

In deciding whether a statute violates the Equal Protection Clause, this Court engages in a two-part analysis. The first step is to determine whether the classification operates to the disadvantage of some suspect class or *impinges upon a fundamental right explicitly or implicitly protected by the Constitution.* If so, the classification is subject to strict scrutiny and this Court must determine whether it is necessary to accomplish a compelling state interest. If not, review is limited to determining

Amendment right to remain silent if asked a question that might incriminate him.

5. Section 491.030 states:
Any party to any civil action or proceeding may compel any adverse party ... to testify

as a witness in his behalf, in the same manner and subject to the same rules as other witnesses; provided, that the party so called to testify may be examined by the opposite party, under the rules applicable to the cross-examination of witnesses.

whether the classification is rationally related to a legitimate state interest. *Id.* at 173 (emphasis added). *Norton* held, and the Court here reaffirms, that SVPs are not members of a suspect class, but "civil commitment of persons so classified impinges on the fundamental right of liberty," that is, physical restraint by confinement to a treatment facility. *Id.* Therefore, this Court must apply strict scrutiny to see whether the state's decision to classify SVPs differently from other involuntary civil detainees is constitutional. "To pass strict scrutiny review, a governmental intrusion must be justified by a 'compelling state interest' and must be narrowly drawn to express the compelling state interest at stake." *Id.*

In *Norton,* the detainee alleged that it violated his equal protection rights that other involuntary civil detainees had a right to be confined in the least restrictive setting, whereas SVPs were required to be confined in a secure facility in all cases. *Id.* at 174. This Court held the state met its burden of showing a compelling state interest for this difference in treatment— protecting the public from crime. This justified the different treatment of SVPs, for the latter's "mental abnormality makes them distinctively dangerous because of the substantial probability that they will commit future crimes of sexual violence if not confined in a secure facility." *Id.*

*Norton* further found that the many procedural safeguards the relevant statutes require be followed before a detainee can be committed as an SVP, the care and treatment the detainee receives, and the right of the detainee to annual reviews to "determine if the person's mental abnormality has improved with treatment and if the individual remains likely to engage in violent sexual acts if released," *id.* at 174–

75, made Missouri's scheme "narrowly tailored to promote the compelling interest of protecting the public from this small percentage of offenders." *Id.* at 175.

In the instant case, the state asserts the legislature has chosen not to extend the right to remain silent to SVP proceedings for similarly compelling reasons. It asks this Court to so conclude from the fact that the right to remain silent is specifically accorded to other involuntary detainees in section 632.335 but is not mentioned specifically in sections 632.492 or 632.495, which set out procedures for SVP trials. In other words, the state asks this Court to infer an affirmative bar on according this right to alleged SVPs from the fact the legislature has consistently "remained silent" on this issue.

The state's argument necessarily is based on the assumption that all procedures and evidentiary rules applicable to SVP proceedings are contained in sections 632.492 and 632.495, without reference to the general civil commitment statutes or to this Court's decisions and evidentiary rules. That assumption is inaccurate.

The statutes cited by the state do not purport to set out all the evidentiary rules governing SVP cases. They basically set out only those procedures that are different from the procedures that would otherwise apply to a civil hearing. The rights these statutes provide to the alleged SVP are important ones, including the right to have counsel appointed if indigent, to a trial in open court, to a jury trial, and to a unanimous verdict on proof beyond a reasonable doubt. *See* secs. 632.492, 632.495.[6] But, they are not comprehensive. This is evident when they are compared to the rights listed for other involuntary civil detainees in section 632.335, which states

---

**6.** Section 632.495 has been revised to require proof by clear and convincing evidence rather than beyond a reasonable doubt. H.B. 1698, 93rd Gen. Assem., 2nd Reg. Sess. (Mo.2006).

that the affected person "has the following rights *in addition to those specified elsewhere*":

(1) To be represented by an attorney;

(2) To present evidence on his own behalf;

(3) To cross-examine witnesses who testify against him;

(4) *To remain silent;*

(5) To view and copy all petitions and reports in the court file of his case;

(6) To have the hearing open or closed to the public as he elects;

(7) To be proceeded against according to the rules of evidence applicable to civil judicial proceedings;

(8) A hearing before a jury if requested by the patient or his attorney.

Sec. 632.335 (emphasis added). The statutes do not purport to contain all of a civil detainee's rights, whether that person is being considered for detainment as an SVP or for other reasons, for it would be improper to infer from the fact that the legislature set out some but not all of a proposed detainee's rights in these various statutes that it intended to deny detainees all non-listed rights.

In other words, whether or not spelled out in the statutes, every detainee, alleged SVP or otherwise, is accorded the right to present and cross-examine witnesses and will be proceeded against according to the rules of evidence. Why, then, does the lack of specification of the right to remain silent in the SVP statutes mean that such a right is barred by them? It does not. The statutes simply are silent on the issue.

The question then becomes, is Mr. Bernat sufficiently similarly situated to other persons subject to involuntary civil commitment that the equal protection clauses of the Missouri and United States constitutions require this Court to imply a right to remain silent and to be protected from adverse inferences being drawn from that silence, or has the state identified a compelling state interest that justifies the distinction drawn between alleged SVPs and other involuntary civil detainees?

The state sets forth two compelling state interests that it says justify this difference in treatment. First, the state says it has:

> an interest in securing the cooperation of alleged sexual predators to diagnose and treat their unusually intractable mental illnesses....

This Court agrees that the state has a compelling interest in securing the cooperation of alleged SVPs in diagnosis and treatment. Absent such cooperation, it would be difficult for either party's doctors to make an accurate assessment of the alleged SVP's mental state, or to treat him or her. *See In re Young,* 122 Wash.2d 1, 857 P.2d 989, 1014 (1993) (applying rational basis rather than strict scrutiny, but holding that securing cooperation of alleged SVPs to diagnose and treat usually intractable mental illnesses is a justification for differential treatment where alleged SVP refused to speak to the state's psychologists). The United States Supreme Court has recognized that:

> Indeed, the State takes the quite plausible view that denying the evaluating psychiatrist the opportunity to question persons alleged to be sexually dangerous would *decrease* the reliability of a finding of sexual dangerousness .... 'to adopt the criminal law standard gives no assurance' that States will reach a 'better' result.

*Allen,* 478 U.S. at 374–75, 106 S.Ct. 2988. The Supreme Court held that the state could use the alleged SVP's refusal to talk to the state's doctors against him.

But, this does not assist the state here, for it makes no claim Mr. Bernat refused to cooperate with his doctors for purposes

of diagnosis or treatment, and the record in this Court would not support such a claim. In fact, the state's witnesses used his interactions with treatment providers as one basis for its arguments about a need for continued confinement. Mr. Bernat argues only that he should not be compelled to testify at trial, or at least that no adverse inference should be drawn from his failure to testify.

The state lists a second compelling state interest:

> The alleged sexual predator's testimony would plainly enhance the reliability of fact finding regarding whether the alleged predator has a mental abnormality and is likely to engage in predatory acts of sexual violence if not confined in a secure facility.

Again, the state's argument is persuasive that the more accurate the jury's information about the sexual predator's condition, the more reliable will be its determination. Of course, this rationale would also apply to commitment proceedings against persons other than alleged SVPs and, in fact, might enhance the reliability of criminal trials themselves. As the United States Supreme Court stated in *Allen* in discussing the analogous right under the Fifth Amendment to remain silent, the privilege "is not designed to enhance the reliability of the fact-finding determination; it stands in the Constitution for entirely independent reasons." 478 U.S. at 375, 106 S.Ct. 2988.

Nonetheless, as in *Norton*, this Court finds the state does have a compelling interest in ensuring that the jury or judge makes a reliable determination of whether the person sought to be committed is an SVP. This better serves both the alleged SVPs' own interests in ensuring that they are not wrongly confined for some mental illness that does not make them SVPs and the state's compelling interest in protecting the public from this group of violent offenders who are more likely to offend than others.

Again, however, this reasoning simply does not apply to this case, for the state did not attempt to call Mr. Bernat as a witness at the trial. He chose not to testify, and the state chose not to call him. The state gives a variety of reasons why it did not want to do so, most of which come down to its belief that Mr. Bernat might not have told the truth and, thus, his testimony would not have increased the reliability of the proceedings.[7] It preferred using Mr. Bernat's silence to gain a tactical advantage by arguing an adverse inference. But, the state offers no rationale why comment on his silence at trial would further the truth-seeking process. As it argued in its brief, the truth-seeking process is aided by *testimony*. It is not aided by speculative inference.

For these reasons, while the state has identified a compelling interest in presenting an alleged SVP's mental condition to the jury so as to enhance the reliability of the proceedings, allowing the state to comment on an alleged SVP's failure to testify is not narrowly tailored to further that interest and fails the equal protection anal-

---

7. The state also argues that it did not want to put him on the stand because it could not vouch for his testimony, but the requirement that a party vouch for its witnesses has not been the law for many years. *James v. Illinois*, 493 U.S. 307, 316 n. 5, 110 S.Ct. 648, 107 L.Ed.2d 676 (noting that the "common-law rule that a party automatically 'vouches for' and hence is inexorably bound by what the witnesses say" has been abandoned); *Rowe v. Farmers Ins. Co.*, 699 S.W.2d 423, 425 (Mo. banc 1985) (adding Missouri to the majority of jurisdictions so holding, stating "the time has come for us to recognize the right of any party to introduce a prior inconsistent statement to impeach any witness regardless of by whom the witness may have been subpoenaed or called").

ysis. The trial court abused its discretion by permitting the state to argue an adverse inference.

## IV. EXCLUSION OF LICENSED SOCIAL WORKER'S TESTIMONY

■ Mr. Bernat also argues the trial court abused its discretion in permitting the state to read into evidence the testimony of Linda Kelly, a licensed social worker. In support, he argues that because section 632.483, RSMo Supp.2003, requires that a psychiatrist or psychologist must offer an opinion that a person meets the definition of an SVP in order to begin the commitment process, only a psychiatrist or psychologist can offer a diagnosis at trial that a person is an SVP, *citing, Johnson v. State*, 58 S.W.3d 496, 499 (Mo. banc 2001). *Johnson* did state that an associate psychologist was not competent to diagnose mental illness at trial. *Id.* In so holding, this Court stated, "[p]ersons who are licensed medical doctors practicing psychiatry, licensed psychologists, and licensed *social workers* are permitted by law to evaluate persons and make diagnoses of mental disorders." *Id.* (emphasis added). The Court further noted that " '[c]linical social work' is defined in section 337.600 to include 'diagnosis, treatment, prevention and amelioration of mental and emotional conditions.' " *Id.*

■ The parties do not dispute that Ms. Kelly was a licensed social worker. As such, the trial court did not abuse its discretion in allowing her testimony. It is within the trial court's discretion to admit or exclude an expert's testimony. *State v. Davis*, 814 S.W.2d 593, 603 (Mo. banc 1991); *Johnson*, 58 S.W.3d at 499.

## V. CONCLUSION

The trial court's judgment is reversed, and the case is remanded.

WOLFF, C.J., TEITELMAN and WHITE, JJ., concur.

LIMBAUGH, J., concurs in part and dissents in part in separate opinion filed.

PRICE and RUSSELL, JJ., concur in opinion of LIMBAUGH, J.

STEPHEN N. LIMBAUGH, JR., Judge, concurring in part and dissenting in part.

I concur in that part of the majority opinion holding that the trial court did not abuse its discretion in allowing the testimony of Ms. Kelly, the licensed social worker, but I respectfully dissent otherwise.

At the outset, I would hold that SVPs, and Bernat in particular, are not similarly situated to other persons under civil commitments for mental illness so as to invoke equal protection concerns. That, of course, is the threshold showing that must be made, *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), but one that the majority disregards. In this Court's first SVP case, *In re Norton*, 123 S.W.3d 170, 173 (Mo. banc 2004), the Court sidestepped the issue by "assuming, arguendo, that other persons rendered dangerous by a mental disorder compose a comparable class to that of [SVPs]," and decided the remaining issues anyway. The court of appeals, however, has aptly observed that "sexually violent predators suffer from a mental condition that differs substantially from the mental conditions which are the subjects of the usual civil commitment proceedings." *State ex rel. Nixon v. Askren*, 27 S.W.3d 834, 842 (Mo.App.2000). And as this Court noted in *Norton*, sexual predators have mental abnormalities that "make[ ] them distinctively dangerous because of the substantial probability that they will commit future crimes of sexual

violence if not confined in a secure facility." *In re Norton*, 123 S.W.3d at 174. Indeed, to qualify as an SVP, a person must "suffer from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence...." Sec. 632.480(5), RSMo 2000.

In contrast, persons are subject to civil commitment merely if, as a result of mental illness, they present a "substantial risk" of serious harm to themselves or others. Secs. 632.335, 632.005(9), RSMo 2000. It is not necessary to show, as is required in SVP cases, that the person has committed a sexually violent offense in the past, that the chance of serious harm is "more likely than not," or even that the potential harm would be the result of a criminal act. These distinctions preclude SVPs from being similarly situated with persons under other civil commitments, and for this reason, I would hold that there is no equal protection violation. *See In re Detention of David C. Samuelson*, 189 Ill.2d 548, 244 Ill.Dec. 929, 727 N.E.2d 228, 237 (2000) (holding that SVP defendants are not similarly situated to other civil detainees because "persons subject to [Illinois' SVPA] possess characteristics which set them apart from the greater class of persons who fall within [Illinois' civil commitment statutes], and such persons present different societal problems"); *Westerheide v. State*, 831 So.2d 93, 112 (Fla.2002) ("Westerheide's equal protection argument rests on the false premise that individuals subject to commitment under [Florida's SVPA] are similarly situated to mentally ill persons committed under [Florida's civil commitment statutes].").

Regarding the equal protection issue that the majority did see fit to address, again I would find no equal protection violation. The majority's holding is that "while the state has identified a compelling interest in presenting an alleged SVP's mental condition to the jury so as to enhance the reliability of the proceedings, allowing the state to comment on an alleged SVP's failure to testify is not narrowly tailored to further that interest and fails the equal protection analysis." The majority defends this holding by claiming that there is no rationale by which the state's comments on the defendant's failure to testify "would further the truth-seeking process ... [and that] the truth-seeking process is aided by testimony ... not ... by speculative inference."

In my view, this truth-seeking analysis has little truth to it. The very reason a party is allowed to comment on the opposing party's failure to testify is to *promote* the truth-seeking process! This is a well-entrenched rule which, as defendant Bernat acknowledges, "permits an unfavorable inference to be drawn against a party, knowledgeable of the facts of the controversy, who fails to testify and [the rule] permits such failure so to be used by an opponent in argument to the jury," *Pasternak v. Mashak*, 428 S.W.2d 565, 568 (Mo. banc 1967). The rationale for the inference, as capsulized from the host of cases on point, is that a party's silence indicates that nothing can be said in contravention of the opposing party's evidence where "the case is such as to call for an explanation, or the evidence is such as to call for a denial." 29 AM.JUR.2D *Evidence* sec. 257 (1994). *See also Baxter v. Palmigiano*, 425 U.S. 308, 319, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153–54, 44 S.Ct. 54, 68 L.Ed. 221 (1923) ("Silence is often evidence of the most persuasive character."). In fact, the case at hand is a quintessential example of the proper application of the rule and the truth-seeking purpose it fulfills. Given the substantial evidence presented in the state's case in chief that defendant is an SVP, why would the defendant not testify in his own behalf to convince the jury otherwise? What

purpose does his silence serve if not to avoid even further damaging testimony? And what is he hiding, if not something detrimental?

It appears, too, that the majority is concerned that the state is using the defendant's silence "to gain a tactical advantage," as if the state were manipulating the truth-seeking process by not calling the defendant in its case in chief. But once the state has made out a prima facie case that defendant is an SVP, the state is doing nothing to dilute the truth-seeking process by not calling the defendant. The defendant can take the stand himself! And he should fail to do so at his own peril!

I confess that I am somewhat unsure of the majority's exact position. Is the majority really contending that the most narrowly tailored procedure to achieve the state's compelling interest in a truth-seeking process is one in which the state must call the defendant in its case in chief or otherwise refrain from commenting on the defendant's silence? If so, that position does not square with the majority's implicit concession that the defendant does not have the right to remain silent and can indeed be compelled to testify against himself at the state's behest. Prohibiting the state from arguing the adverse inference from defendant's silence is an incident or corollary to the right to remain silent, so that if, as here, there is no right to remain silent, there is no justification for prohibiting the state from arguing the adverse inference. It matters not a whit that the state did or did not call the defendant in its case in chief.

Having determined that the trial court committed no error, I would affirm the judgment of the trial court.