In the Matter of the Care and Treatment of Richard TYSON, a/k/a James L. Thompson, a/k/a Richard J. Tyson, a/k/a Ritch E. Tyson, a/k/a Otis L. Tyson, Richard Tyson, Ritch Tyson, a/k/a Richard Earvin, a/k/a Rich Tyson, Appellant,

v.

STATE of Missouri, Respondent.

No. SC 88799.

Supreme Court of Missouri,
En Banc.

April 15, 2008.

Emmett D. Queener, Office of Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Charles S. Birmingham, Karen A. Winn, Asst. Attys. Gen., Jefferson City, for Respondent.

MARY R. RUSSELL, Judge.

The probate division of the circuit court found at Richard Tyson's probable cause hearing that the State had presented clear and convincing evidence that there was probable cause to believe he was a sexually violent predator ("SVP") on the grounds that he suffered from antisocial personality disorder that constituted a mental abnormality. It also gratuitously found that the State had failed to show probable cause to believe Tyson was a pedophile, which the State had also alleged, because the State had not presented evidence as to how long Tyson had been attracted to children. At his later civil commitment trial under the Sexually Violent Predator Act ("SVP Act"),[1] the State did present evidence of

---

**1.** The SVP Act includes sections 632.480 to 632.513, RSMo 2000, and where amended,

the duration of Tyson's attraction to children, as well as other evidence supporting the determination that he was an SVP. The jury found Tyson was an SVP, and he was involuntarily civilly committed under the SVP Act. He appeals,[2] claiming that the State wrongly was permitted to introduce evidence of pedophilia as the predicate mental abnormality required to commit him under the SVP Act. Because the probate division found that the State had not presented clear and convincing evidence of his pedophilia at his probable cause hearing, he argues that the State should have been prevented from presenting any evidence of pedophilia at his subsequent civil trial.

This Court finds no error and affirms.

## I. Background

Tyson has been charged and convicted repeatedly for indecent exposure, open lewdness, and other indecent conduct. Since his first charge for indecent exposure in 1959, he has been arrested on numerous occasions for exposing himself to young girls. He was most recently charged with molesting two young sisters, aged seven years old and 10 years old, in 1996. He pleaded guilty to first-degree child molestation and was sentenced to seven years imprisonment. Before he completed serving his sentence, the State filed a petition to indefinitely civilly commit him as a sexually violent predator ("SVP") under the SVP Act.

Two requirements must be met for an individual to be considered an SVP: (1) the person must suffer "from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility"; and (2) the person "[h]as pled guilty or been found guilty, or been found not guilty by reason of mental disease or defect pursuant to [section 552.030, RSMo 2000], of a sexually violent offense; or ... been committed as a criminal sexual psychopath...."[3] Section 632.480(5).

The issues in this case center on whether the State properly proved the first requirement to find Tyson is an SVP—whether he suffers from a mental abnormality that makes him more likely than not to engage in predatory acts of sexual violence if not confined as an SVP.

In the process of attempting to commit an individual as an SVP, the State petitions the probate division to make probable cause determinations that the charged individual is an SVP.[4] Sec. 632.489. The

RSMo Supp. 2007. Statutory references in this opinion are to RSMo Supp. 2007, unless otherwise indicated.

2. This Court has jurisdiction pursuant to Mo. Const. art. V, sec. 10, as this case was transferred after disposition by the court of appeals.

3. A mental abnormality is defined as "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others." Sec. 632.480(2). "Acts of sexual violence" are the equivalent of "sexually violent offenses." *See Care & Treatment of Schottel v.*

*State,* 159 S.W.3d 836, 842 (Mo. banc 2005). Section 632.480(4) outlines that "sexually violent offenses" are: forcible rape; rape; statutory rape in the first degree; forcible sodomy; sodomy; statutory sodomy in the first degree; an attempt to commit any of the preceding crimes; child molestation in the first or second degree; sexual abuse; sexual assault; deviate sexual assault; or the act of abuse of a child as defined in section 568.060.1(1), which involves sexual contact, and as defined in section 568.060.1(2).

4. The State must file a petition in the probate division that alleges facts supporting SVP commitment. Sec. 632.486. The probate judge must then make an initial determination if there is probable cause that the suspect

State argued that Tyson should be committed as an SVP because he is a pedophile, an exhibitionist, and displays antisocial personality disorder with psychopathic traits. The probate division expressly rejected the State's contentions that it had presented sufficient evidence at the probable cause hearing to show that Tyson suffered from pedophilia. In relevant part, the probate division found: [5]

> [T]he State failed to prove by clear and convincing evidence that the respondent is a pedophile, not because it failed to show that [he] has an attraction to prepubescents, but because it failed to show that the attraction lasted 6 months. The State did prove by clear and convincing evidence that [Tyson] has a diagnosable personality disorder.

The probate division, however, found that there was "probable cause to believe that [Tyson] suffers from antisocial personality disorder with psychopathic traits, that such a disorder is a mental abnormality ... [and that] he is [an SVP] within the meaning of [section 632.480(5) ]." As such, Tyson was bound over for a jury trial to determine whether he should be committed as an SVP. Sec. 632.492.

Over Tyson's objections, the State's evidence at his SVP trial included evidence of pedophilia, as well as other evidence showing he was an SVP.[6] The jury found that he is an SVP, and he was civilly committed.

Tyson appeals.

is an SVP. Sec. 632.489.1. After the initial probable cause determination, the suspect is afforded a contested probable cause hearing under section 632.489.2. At the probable cause hearing, the suspect is afforded the right to an attorney, the right to present evidence, and the right to cross-examine the attorney general's evidence. Sec. 632.489.3. If the probate division finds probable cause to believe that the person is an SVP, the inmate may then be bound over for a full trial. Sec. 632.492.

## II. Standard of Review

The trial court's decision to allow evidence at trial is reviewed for abuse of discretion. *Elliott v. State*, 215 S.W.3d 88, 92 (Mo. banc 2007). Abuse of discretion is found only if the court's ruling was against the logic of the circumstances and so arbitrary or unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.*

## III. Do probable cause findings limit the State's evidence at trial?

Tyson maintains that the State's case against an SVP can only rest on evidence found by the probate division at the probable cause hearing to be sufficiently clear and convincing in itself to support a probable cause determination that the person is an SVP. He moved to prohibit pedophilia evidence from his trial because the probate division had expressly held that the State had failed to show the duration of Tyson's attraction to children at the probable cause hearing and, thus, had not shown probable cause to believe Tyson was a pedophile at that hearing. The trial court, however, determined that, at a civil commitment trial, the SVP Act does not limit the State's presentation of particular theories supporting a finding that a person is an SVP to only those theories proved at a prior probable cause hearing.

At the probable cause stage of SVP commitments, the probate division is

5. Nothing requires that the probate division issue findings as to its probable cause determinations.

6. The State argued that Tyson suffered pedophilia, exhibitionism, and antisocial disorder and, thus, suffered a mental abnormality that made him more likely than not to engage in predatory acts of sexual violence.

tasked with acting as a "gatekeeper merely to determine if the State's evidence raises a triable issue of fact." *Martineau v. State*, 242 S.W.3d 456, 460 (Mo.App. 2007) (citing *Schottel*, 159 S.W.3d at 845). This gatekeeping role does not allow the court to weigh evidence or make credibility determinations. *Id.* Rather, the court's duty is to determine if probable cause exists to believe that the alleged offender is an SVP under the definition of that term in section 632.480(5), not under any precise theory suggested by the State's evidence at the probable cause hearing. Nothing in the SVP Act articulates that probable cause to bind a suspected SVP over for trial requires acceptance of a particular diagnosis of his mental abnormality. Where there is probable cause that a suspected offender is an SVP under *any* theory, the commitment proceedings against him advance to the trial stage.

The SVP Act contemplates that additional discovery will be accomplished after the probable cause hearing. Section 632.489.4 mandates that an alleged SVP who is bound over after a probable cause determination will undergo additional psychiatric or psychological evaluation before his trial. Evaluations conducted pursuant to section 632.489.4 can include "interview[s with] family and associates [of] the person being examined, as well as victims and witnesses of the person's offense or offenses," review of records relied on by previous evaluators, and consideration of "any police reports related to sexual offenses" by the suspected SVP. Section 632.489.4. Additionally, the SVP Act provides that "[i]n order to protect the public," relevant information and records" relating to a suspected SVP are to be provided to the State for use in "determining whether a person is or continues to be [an SVP]." Sec. 632.510, RSMo 2000.[7]

Section 632.510's mention of providing "relevant information and records" with an intent to "protect the public" demonstrates that the SVP Act intends that a thorough assessment of an alleged offender's history and likelihood to reoffend be considered when making the case for his commitment as an SVP. Because the SVP Act contemplates that more information about a suspected SVP will be acquired after a probable cause determination is made in his case, it would be illogical to limit evidence at trial only to diagnoses specifically accepted by the probate division at the probable cause hearing. The State should not be constrained by the probate division's probable cause findings from presenting relevant evidence about whether an alleged offender suffers any mental abnormality that makes him "more likely than not to engage in predatory acts of sexual violence" if not committed as an SVP.

 Tyson attempts to equate probable cause proceedings under the SVP Act with probable cause proceedings in criminal matters. His arguments are unpersuasive, however, because it is clear that SVP Act proceedings are civil in nature. *Elliott*, 215 S.W.3d at 93 ("Missouri's SVP statute is civil in nature.").

7. All references to section 632.510 are to RSMo 2000.

Pursuant to section 632.489.4, the State had Tyson evaluated by two psychiatrists prior to his trial. The first doctor found that Tyson did not suffer any "mental abnormality." The other doctor, however, concluded that Tyson was a pedophile. The second doctor's evaluation of Tyson included assessment of mental health and police records that were not available until after the probable cause hearing. These belatedly-obtained records were acquired pursuant to section 632.510 and included mental health records from California and police records from Kansas City that illuminated Tyson's extended history of indecent exposure crimes directed at teen and pre-teen girls.

■ This Court also does not find persuasive Tyson's arguments that his due process rights were violated by the State's introduction of pedophilia evidence at his trial. Tyson asserts that the State's position advocates a "wide-open free-for-all" in persuading that a suspect qualifies as an SVP, but there is no doubt that he had adequate notice that the State's case against him included the theory that he suffered pedophilia. Even after his probable cause hearing, the State's discovery and expert evaluations focused on evidence of pedophilia.

This Court finds no error in the trial court's decision to permit evidence of pedophilia at Tyson's trial.

### IV. Was pedophilia evidence from the 1950s or 1960s properly admitted?

■ Tyson argues that the trial court erred in admitting, over his objections, evidence that he had sexual relations in the late 1950s or early 1960s with a 13 year old and a 15 year old. He contends that this evidence was more prejudicial than probative and had been excluded by the probate division prior to trial because it did not establish the presence of pedophilia. The State, however, convinced the trial court that the evidence was admissible at trial to impeach Tyson's expert witness's testimony that Tyson's sexual interests focused on women, not girls. Tyson argues that his expert did not offer the testimony the State alleged it needed to impeach.

Tyson's arguments are not persuasive. At trial, the State inquired of his expert, "What do you think is the focus of his sexual interest?" The expert replied, "I think the focus is—and some of this is borne out in the record—young women, women primarily from the age 18 through early 20s or at least this was the focus."

■ The trial court's decision to allow evidence for purposes of cross-examination is reviewed for abuse of discretion. *See* *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 869 (Mo. banc 1993). Given that Tyson's expert testified that Tyson's sexual interest was in women over the age of 18, the trial court did not abuse its discretion in permitting the State to cross-examine the expert about the evidence relating to Tyson's past sexual relations with underage girls.

### V. Was it error to allow testimony regarding actuarial instruments?

■ Tyson argues that the trial court erred in admitting, over his objections, testimony by the State's psychiatric expert relating to two actuarial instruments—the Static–99 and the MnSOST–R—he had applied to Tyson. Tyson admits that actuarial instrument testimony was previously found admissible in SVP proceedings in *Goddard v. State*, 144 S.W.3d 848, 851–55 (Mo.App.2004). He contends, however, that *Goddard* only addressed the reliability of experts' use of actuarial instruments. He argues that his complaints about the instruments center on their lack of relevance because they did not pertain specifically to his risk to reoffend and because they do not distinguish between sexually violent offenses and other sexual offenses.

In *Murrell v. State* an accused SVP similarly challenged the use of actuarial instruments in his case, arguing that the instruments were not relevant to his individual conduct. 215 S.W.3d 96, 111–12 (Mo. banc 2007). This Court, however, found that "[i]f the facts and data are shown to be reasonably relied upon by experts in the field, they are necessarily relevant to the issue the expert is addressing." *Id.* at 112. *Murrell* concluded that the instruments are the type reasonably relied on by experts in the field and meet standards for admissibility of expert testi-

mony under section 490.065.3. *Id.* at 110–11. *Murrell* discusses, however, that "testimony as to the results of an actuarial instrument as applied to an individual standing alone" should be combined with an independent clinical assessment of the accused SVP. *Id.* at 112. This Court stated that "[t]estimony incorporating the results of actuarial instruments is admissible in cases involving the civil commitment of an SVP when the instruments are used in conjunction with a full clinical evaluation." *Id.*

As in *Murrell*, the State's expert in Tyson's case used the challenged actuarial instruments in conjunction with a full clinical evaluation. The State's expert testified to reasons beyond the actuarial assessments that led him to believe that Tyson was at risk of reoffending, including: he had failed to complete a sex offender treatment program, his history of sexual and non-sexual criminality, his history of drug and alcohol abuse, and his diagnoses of pedophilia and personality disorder. Further, the expert explained that the instruments "[do] not discriminate between violent and non-violent" offenses, and he explained how he used the instruments to rate Tyson's risk to reoffend.

Under these facts, Tyson fails to show that the trial court abused its discretion in allowing evidence related to the actuarial instruments.

## VI. Conclusion

The trial court's judgment is affirmed.

STITH, C.J., PRICE, TEITELMAN, LIMBAUGH, and WOLFF, JJ., and KOFFMAN, Sp.J. concur.

BRECKENRIDGE, J., not participating.