EDWARD R. ARDINI, JR., JUDGE
*359 Adam Derby ("Derby") appeals his commitment as a "sexually violent predator" ("SVP") within the meaning of section 632.480(5)[1] of the Sexually Violent Predator Act ("SVP Act").[2] Derby raises four points on appeal. His first point alleges that the trial court abused its discretion in allowing expert witnesses to testify about statements made by Derby during his treatment. Derby's second point alleges that the trial court abused its discretion in denying his request for certain discovery prior to his probable cause hearing. Derby alleges in his third point that the trial court erred in committing him to the custody of the Department of Mental Health ("DMH") because the evidence was insufficient to establish that he currently meets the definition of an SVP. And, Derby's last point challenges the constitutionality of various aspects of the SVP Act. Finding no error, we affirm the judgment of the trial court.
FACTUAL AND PROCEDURAL BACKGROUND[3]
In June 2009, law enforcement officers executed a search warrant at Derby's residence and seized a computer containing child pornography. Derby was later found guilty of possession of child pornography and sentenced to fifteen years in the Missouri Department of Corrections ("DOC"). On March 1, 2016, in anticipation of Derby's release, the State filed a petition alleging Derby to be an SVP under the SVP Act. Pursuant to section 632.480(5), a person will be committed to the custody of DMH as an SVP if the State proves by clear and convincing evidence that the individual: "(1) has committed a sexually violent offense; (2) suffers from a mental abnormality; and (3) this mental abnormality 'makes the person more likely than not to engage in predatory acts of violence if not confined in a secure facility.' " In re Kirk , 520 S.W.3d 443, 448-49 (Mo. banc 2017). A jury trial was held, and Derby was found to meet the SVP criteria based on the following facts.
Around the age of eleven, Derby sexually abused his younger brother by touching his genitals and performing oral sex on him. This conduct resulted in Derby being removed from his home and placed in the custody of the Division of Youth Services.
Several years later, when Derby was seventeen, a thirteen-year-old girl performed oral sex on him. When Derby was eighteen, his sister reported to police that she believed Derby had inserted his finger into the rectum of his three-year-old nephew. This allegation did not lead to the filing of criminal charges. When the nephew was four, he accused Derby of fondling him. This incident resulted in Derby pleading guilty to child molestation in the first *360 degree and being sentenced to five years in prison. Derby reported at the time that he had tried to stop himself from touching his nephew but was sexually frustrated after being unable to pay for child pornography on the computer. During this incarceration, Derby chose not to participate in the Missouri Sex Offender Treatment Program ("MoSOP").
In December 2006, approximately four months after his release from prison, a search warrant executed at a residence Derby shared with his brother resulted in the discovery of child pornography. Although he initially claimed the pornography belonged to his brother, Derby later admitted that he had downloaded and viewed the child pornography. He was found guilty of two counts of possession of child pornography and sentenced to consecutive one-year terms in the county jail.
Derby was released in October 2008 and relocated to St. Louis, Missouri, where he began living with two other sex offenders. Derby admitted that this housing decision was motivated, in part, by an expectation that the arrangement would provide him access to child pornography. In June 2009, law enforcement executed a search warrant at the home and seized a computer containing child pornography. During the course of the ensuing investigation, Derby admitted that a ten-year-old at some point had kissed him on the lips.[4] Derby was convicted of possession of child pornography and sentenced to fifteen years in the DOC. While serving this sentence, he completed MoSOP.
Two experts, Dr. Jeffrey Kline ("Kline") and Dr. Amy Griffith ("Griffith"), testified at trial that Derby met the definition of an SVP under the SVP Act. Both experts diagnosed Derby with two mental abnormalities-pedophilic disorder and antisocial personality disorder-that predisposed Derby to commit predatory, sexually violent offenses if not confined in a secure facility.[5] Both doctors relied on the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders in reaching their diagnoses.
Testimony of Dr. Kline
Dr. Kline explained that pedophilic disorder is a sexual attraction to prepubescent children, generally under the age of thirteen, which causes a person to have serious difficultly controlling his or her behavior or causes the person to engage in behavior harmful to others. Dr. Kline diagnosed Derby with pedophilic disorder based on a history of engaging in sexual behavior toward a child on at least two occasions, fantasizing about having sex with children, and actively using child pornography during at least three different time periods. Derby had also expressed a belief that the age of consent should be lowered and acknowledged during his MoSOP treatment that he was still having sexual fantasies and urges about children. Dr. Kline testified that Derby currently suffered from pedophilic disorder because, although his sexual urges might decline with age, Derby's fundamental attraction to prepubescent children would not completely dissipate.
Dr. Kline also found that Derby currently suffered from antisocial personal disorder, which is characterized by not following *361 societal rules prior to the age of fifteen and extending into adulthood. Dr. Kline noted that Derby engaged in sexual offending behavior at a young age, engaged in similar illegal conduct shortly after being released from incarceration, and lacked remorse for some of his conduct. Dr. Kline also noted that Derby often deflected blame onto others such as his brother and roommates in St. Louis.
Dr. Kline testified that both of Derby's mental abnormalities-pedophilic and antisocial personality disorders-affect Derby's ability to control his behavior and thus predispose him to commit sexually violent offenses. Derby's inability to control his behavior has been demonstrated by a history of reoffending very quickly (months rather than years) after being punished. Although Dr. Kline acknowledged that Derby had not recently offended, he attributed this to a lack of opportunity due to his incarceration.
Finally, Dr. Kline concluded that Derby was more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility. Dr. Kline explained that predatory acts are those directed towards individuals, including family members, for the primary purpose of victimization. Dr. Kline noted that children portrayed in child pornography are also victimized. Dr. Kline explained that Derby's past offense against his nephew was a predatory, sexual act and that Derby's purpose in molesting his nephew was victimization. Dr. Kline opined that future acts by Derby were similarly more likely than not to be of a predatory, sexually violent nature involving some victimization.
Dr. Kline also used an instrument that assesses an individual's risk of committing sexual offenses in the future-the Static-99R-in reaching his conclusion that Derby was more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility. Based on this assessment, Dr. Kline placed Derby at a risk level of seven on a scale of -3 to 13. Historically, thirty percent of individuals with this score reoffend in five years and forty-two percent reoffend in ten years. Dr. Kline further noted that the Static-99R often understates a person's risk of reoffending because it only considers conduct that has come to the attention of authorities and does not factor in predatory acts of sexual violence committed by an individual who is not caught. In addition, the assessment does not specifically consider diagnoses such as pedophilic and antisocial personality disorders. Research has shown that the risk of re-offending is higher for individuals diagnosed with pedophilic disorder.
Testimony of Dr. Griffith
Dr. Griffith, a licensed psychologist and the clinical director of MoSOP, also concluded that Derby suffered from pedophilic and antisocial personality disorders and met the SVP criteria.
In diagnosing Derby with pedophilic disorder, Dr. Griffith relied on Derby's conviction for sexually molesting his four-year-old nephew and a self-reported, uncharged offense involving a thirteen-year-old female. Also diagnostically relevant were Derby's two convictions for possessing child pornography as well as his admission that he had a sexual preference for children over adults. Additionally, Derby rated at the maximum score on the Screening Scale for Pedophilic Interest, which evaluates an individual's sexual interest in children and the likelihood of sexual recidivism. Derby's score was consistent with a diagnosis of pedophilic disorder.
Dr. Griffith also considered whether Derby suffers from antisocial personality disorder. To be diagnosed with antisocial *362 personality disorder, an individual must meet three of seven criteria involving a generally pervasive disregard for others and the violation of rules and norms. This disregard must manifest prior to the age of fifteen. Some of the criteria includes deceitfulness, reckless disregard for self and others, lack of remorse, lack of concern for the welfare of others, and impulsivity. Dr. Griffith testified that Derby met all seven criteria, specifically noting that Derby at times denied committing his offenses or blamed others for his conduct.
To determine whether Derby was more likely than not to commit a predatory act of sexual violence if not confined in a secure facility, Dr. Griffith also performed a Static-99R risk assessment. Dr. Griffith scored Derby at a ten, three points higher than Dr. Kline.[6] Dr. Griffith also used another instrument called the Stable-2007, which measures dynamic risk factors not captured by the Static-99R. Derby scored a nineteen out of twenty-six possible points, indicating a high treatment need.[7] Derby's composite scores from the Static-99R and Stable-2007 placed him at a very high risk to reoffend.
Dr. Griffith also examined additional risk factors relating to sexual recidivism. Dr. Griffith noted that Derby had denied committing the offense of possessing child pornography, even though he acknowledged looking at and masturbating to child pornography, and maintained a defensive attitude and deflected his behavior or offenses onto others throughout treatment.
Dr. Griffith concluded that Derby would continue to suffer from pedophilic and antisocial personality disorders, affecting his volitional capacity and predisposing him to commit sexually violent offenses in the future if not confined in a secure facility, based on his sexual urges toward children and lack of concern for the impact of his actions on others. This conclusion was supported by Derby's documented inability to be in the community without committing an offense against children.
Testimony of Derby
Derby's testimony at trial substantially reflected the State's case-in-chief. Derby testified about his exposure to sexual experiences while growing up. Derby admitted to touching his brother's genitalia when he was five and later questioning the appropriateness of his actions after learning about good and bad touching at school. When Derby was in middle school, he reported to his school counselor that he had been molesting his brother, causing him to be removed from the home.
Derby eventually returned to the home to live with his mother but later moved in with his sister, where Derby's nephew also lived. Derby testified that this stressful living situation led him to revert to old habits of using sexual conduct-often masturbation, deviant fantasies, and child pornography-to handle stress. When Derby's nephew was three, Derby's sister noticed that there was blood in the child's stool, and she reported that Derby had inserted his finger in the child's rectum. Although investigators were unable to establish evidence of sexual abuse in that instance, Derby was convicted of child molestation a year later based on a separate allegation of *363 abusing his nephew. Derby was sentenced to five years of incarceration.
After Derby's release, he returned home to live with his mother. Derby's brother was also living at the home. Derby testified that he had discovered child pornography on a computer that, he alleged, was downloaded by his brother. Derby admitted to viewing the child pornography, which led to a conviction for which he spent two years in jail. Derby attempted to minimize this behavior by saying that he only viewed, rather than downloaded, the child pornography.
While in jail, Derby re-established contact with two sex offenders that he had met while incarcerated for the sexual abuse of his nephew. After his release from jail, Derby asked the individuals to move in with him, in part because he knew that they also enjoyed child pornography. Derby was again found to possess child pornography, resulting in his most recent incarceration. During this prison term, he completed MoSOP.
Derby was flagged as a person who may meet the SVP criteria. Additional facts are set forth throughout this opinion as necessary.
JURISDICTION
Because Derby raises several arguments challenging the constitutionality of the SVP Act, we must examine whether we have jurisdiction over this appeal, as "[a]rticle V, section 3 of the Missouri Constitution vests the Missouri Supreme Court with exclusive appellate jurisdiction in all cases involving the validity of a statute." In re J.D.B. , 541 S.W.3d 662, 666 (Mo. App. E.D. 2017) (citations omitted). However, we may review a case raising such issues "[w]hen a party's claim is not real and substantial, but, instead, [is] merely colorable[.]" Id. at 667 (citations omitted). A claim challenging the validity of a statute is "merely colorable" if it has already "been addressed by either the United States Supreme Court or the Missouri Supreme Court[.]" Id. (citation omitted). Because the constitutional issues raised in this appeal have already been addressed by the United States or Missouri Supreme Courts, our jurisdiction is proper.
CONSTITUTIONALITY OF THE SVPA
For ease, we address Derby's points on appeal out of order. Derby's last point on appeal alleges that the SVP Act is unconstitutional because it is punitive in effect or purpose. Derby argues that the SVP Act is punitive because it (1) permits lifetime custody or confinement without allowing for release and (2) does not require the least restrictive environment of confinement. Based on this, he argues that he should be afforded the same protections as a criminal defendant and thus (3) the State should bear a higher burden of proof. Derby also argues that (4) the right to request a jury trial should belong to Derby and not the State, (5) he should have the right to remain silent and the right to counsel during his end-of-confinement evaluation, and (6) the SVP Act's conditional release procedures are unconstitutional.[8]
Pursuant to Rule 84.04, a point relied on must "(1) identify the challenged *364 ruling, (2) concisely state the legal reasons for the challenge, and (3) explain in summary fashion why, in the context of [this] case, those legal reasons support the challenge." Kirk , 520 S.W.3d at 450 n. 3 (citation and internal quotation marks omitted). A point relied on that contains more than one basis for reversal, i.e. , "groups together multiple, independent claims rather than a single claim of error," is multifarious and does not comply with Rule 84.04. Id. (citations omitted). Because multifarious points do not comply with Rule 84.04(d), they "preserve nothing for review" and are "subject to dismissal." Id. (citations omitted). Derby's point relied on raises no less than six bases for reversal. Nevertheless, we will address these points ex gratia. Id.
Lifetime Confinement
Several of Derby's arguments under this point of error presume that the SVP Act is punitive, results in lifetime confinement, and thus violates the prohibition on ex post facto laws and double jeopardy. This argument has been rejected repeatedly by the Missouri Supreme Court, which has consistently held that SVP proceedings are civil, not punitive, and thus do not violate the constitutional prohibitions against ex post facto laws and double jeopardy, each of which are protections afforded criminal defendants. Kirk , 520 S.W.3d at 450 ; Nelson , 521 S.W.3d at 232 ; see also In re Underwood , 519 S.W.3d 861, 872 (Mo. App. W.D. 2017). We are bound to follow the same. In re Brown , 519 S.W.3d 848, 853 (Mo. App. W.D. 2017) (citation omitted).
Least Restrictive Environment
Derby's argument that the SVP Act's failure to consider and provide the least restrictive environment of confinement shows an intent to punish and thus violates certain constitutional protections has also been rejected by the Missouri Supreme Court. Kirk , 520 S.W.3d at 450-51 ; see also Brown , 519 S.W.3d at 855. Secure confinement of persons adjudicated to be SVPs "is narrowly tailored to serve the compelling state interest of protecting the public from crime," and "that interest justifies the differential treatment[.]" Kirk , 520 S.W.3d at 450-51 (citation and internal quotation marks omitted).
Burden of Proof
Derby also argues that the SVP Act is punitive and the State must accordingly be held to the same burden of proof applicable to criminal cases. As previously stated, Missouri courts have repeatedly held that the SVP Act is not punitive or criminal. See, e.g., id. at 450 ; Underwood , 519 S.W.3d at 872. Because SVP proceedings are civil , the "clear and convincing" burden of proof is constitutionally appropriate. Kirk , 520 S.W.3d at 452 (citation omitted).
Right to a Bench Trial
Derby additionally argues that the respondent in SVP proceedings should have the exclusive right to demand or waive a jury trial and that the inability to do so violates his due process and equal protection rights.
Section 632.492 provides that "[t]he person, the attorney general, or the judge shall have the right to demand that the trial be before a jury." Accordingly, Derby has the right to demand a jury trial. However, he shares this right with the attorney general and the trial judge. As a result, an SVP respondent's desire for a bench trial must succumb to a preference by either the attorney general or the trial judge to a trial by jury. Derby argues that the failure to provide him the unilateral right to a bench trial violates due process and equal *365 protection principles and notes that criminal defendants have the right to waive a trial by jury (with the assent of the court) and respondents in other involuntary civil commitment proceedings are vested with exclusive control over whether their case is tried to a jury.
The Missouri Constitution grants a criminal defendant the right to waive a jury trial with the assent of the court. Mo. Const. art. 1, § 22(a). To the extent that Derby claims a respondent in SVP proceedings should have a similar right because the SVP Act is criminal or punitive, we reject his argument as explained supra.[9] See, e.g., Kirk , 520 S.W.3d at 450 ; J.D.B. , 541 S.W.3d at 672-73.
Derby also claims a right to a bench trial because such a right is afforded respondents in other types of involuntary civil commitment proceedings. See § 632.335.2(8). This Court has previously considered and rejected this argument. State ex rel. Nixon v. Askren , 27 S.W.3d 834, 841-42 (Mo. App. W.D. 2000). In Askren , the Court found that the premise of the SVP Act is that sexually violent predators suffer from a mental condition that differs substantially from the mental conditions of those involved in other civil commitment proceedings and that this constituted a rational basis for allowing the State the right to "a nonconsensual jury trial." Id. Moreover, it is well-settled that "there is no requirement that sexually violent predators be afforded exactly the same rights as persons committed under the general civil standard." Kirk , 520 S.W.3d at 451 (rejecting argument that SVPs, like general civil committees, should be held in the least restrictive environment); see also In re Coffman , 225 S.W.3d 439, 445 (Mo. banc 2007) (holding that the requirement that an SVP demonstrate his initial right to release by a preponderance of the evidence did not violate equal protection even where others subject to involuntary civil commitment were not required to make such a preliminary showing).
Right to Remain Silent and Right to Counsel
Derby claims that due process and equal protection considerations require that a right to counsel and a right to remain silent attach prior to the end-of-confinement evaluation being performed under section 632.483. Derby further argues that an SVP respondent should be advised before any evaluation that "he has the right to counsel; the evaluation is to determine whether he meets detention criteria; his statements may be used in determinations, may result in detention proceedings, and may be used in court."
The end-of-confinement evaluation is requested by the agency with jurisdiction, usually the DOC, when it is determined a person may meet the criteria of a sexually violent predator and will soon be released from custody. See § 632.483.2(3). This evaluation is one of the factors considered in determining whether the attorney general will file a petition seeking the individual's commitment pursuant to section 632.486. §§ 632.483; 632.486.
i. Right to Counsel
The Missouri Supreme Court has previously held that a person is not entitled to counsel at the end-of-confinement evaluation stage because legal proceedings have not yet commenced.
*366 In re Norton , 123 S.W.3d 170, 172 (Mo. banc 2003). Once the legal proceedings have commenced, i.e. , the attorney general files a petition seeking the alleged SVP's commitment pursuant to section 632.486, the right to counsel vests. Id.
The Missouri Supreme Court has also rejected Derby's equal protection argument that is founded on purported differences between when the right to counsel attaches in an SVP case compared to other involuntary commitment matters. Id. at 173-74. The Court noted that the right to counsel attaches in both instances at the time legal proceedings are initiated (with the filing of the petition or application), rendering any equal protection claim meritless. Id.[10] Likewise, those who may be involuntarily committed due to alcohol or drug abuse pursuant to section 631.145 or incapacity or disability pursuant section 475.075 are not appointed an attorney until after the proceedings have been initiated by the filing of an application or petition with the court.
ii. Right to Remain Silent
Derby's arguments that due process and equal protection considerations require that a person who may meet the SVP criteria be afforded the right to remain silent during the end-of-confinement evaluation must also fail pursuant to precedent.[11] As stated throughout this opinion, Missouri courts have consistently held that SVP proceedings are not punitive or criminal in nature. See Kirk , 520 S.W.3d at 450 ; J.D.B. , 541 S.W.3d at 672. The United States Supreme Court has held that where SVP proceedings are not "criminal," a respondent may not avail himself of the constitutional right against self-incrimination, including when being examined by a psychiatrist. Allen , 478 U.S. at 368-75, 106 S.Ct. 2988 ; see also In re Wadleigh , 145 S.W.3d 434, 439-40 (Mo. App. W.D. 2004) (noting that the right against self-incrimination is a criminal "constitutional right which the U.S. Supreme Court has held is not applicable in civil commitment proceedings"). In reaching this decision, the Court recognized that "denying the evaluating psychiatrist the opportunity to question persons alleged to be sexually dangerous would decrease the reliability of a finding of sexual dangerousness." In re Bernat , 194 S.W.3d 863, 869 (Mo. banc 2006) (quoting Allen , 478 U.S. at 374-75, 106 S.Ct. 2988 ).
Derby nevertheless argues that the right to remain silent in the SVP context provides less safeguards than in general involuntary commitment proceedings resulting in an equal protection violation.[12]
*367 While differences exist in the timing and scope of the rights afforded respondents under the different commitment actions, as it relates to the right to remain silent during evaluations in the SVP context, this disparity does not suffer from equal protection concerns as "the state has a compelling interest in securing the cooperation of alleged SVPs in diagnosis and treatment." Id.
Accordingly, Derby's claim that his due process and equal protection rights were violated is denied.
Conditional Release Procedures
Finally, Derby argues that the SVP Act's two-step conditional release scheme is unconstitutional because it violates due process and equal protection. This issue is not properly before us as it may only be raised in an appeal from the denial of a petition for release. See Kirk , 520 S.W.3d at 450 (stating that whether the release provisions are constitutionally sufficient was not before the court where issue was only whether appellant's commitment was constitutionally permitted).
Because each of Derby's constitutional claims have been previously addressed by the Missouri Supreme Court or must otherwise fail, this point on appeal is denied.
POINT I-PRIVILEGED STATEMENTS
In his first point on appeal, Derby argues that Dr. Kline and Dr. Griffith's expert testimony based on statements Derby made to treatment providers should not have been admissible because Derby's statements to the treatment providers were privileged and the statutory exception to this protection contained in section 632.510 does not extend to the use of those statements in judicial proceedings. Derby further alleges the exception violates his due process and equal protection rights.
Standard of Review
In determining whether this testimony was privileged or admissible, the trial court was required to interpret sections 337.540 and 632.510. Our review of a trial court's statutory interpretation, which is a question of law, is de novo. Kivland v. Columbia Orthopaedic Group, LLP , 331 S.W.3d 299, 311 (Mo. banc 2011) (citation omitted).
Discussion
"Section 337.540 generally defines when communications between a person and a licensed professional counselor are considered privileged" and provides, in part, that "the licensed professional counselor shall not be examined or be made to testify to any privileged communication without the prior consent of the person who received his professional services[.]" J.D.B. , 541 S.W.3d at 674-75. However, the legislature enacted section 632.510, creating an exception in the SVP context which provides:
In order to protect the public, relevant information and records which are otherwise confidential or privileged shall be released to the agency with jurisdiction or the attorney general for the purpose of meeting the notice requirement provided in section 632.483 or 632.484 and determining whether a person is or continues to be a sexually violent predator.
Id. at 675.
Although Derby concedes that privileged communications may be used by the agency with jurisdiction and the Attorney General for notice purposes or their own determinations regarding whether a person is or continues to be an SVP, he argues the exception does not extend to the related judicial proceedings and thus the trial court's admission of such communications *368 violated his due process and equal protection rights.
"The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to the intent if possible, and to consider the words in their plain and ordinary meaning." Norton , 123 S.W.3d at 172 (citation omitted). Derby's strained interpretation of section 632.510 is inconsistent with its plain language, which specifically permits otherwise privileged information and records to be used "for the purpose of ... determining whether a person is or continues to be a sexually violent predator." Moreover, section 632.489.4 provides that the psychiatrist or psychologist conducting an examination "shall have access to all materials provided to and considered by the multidisciplinary team[,]" which includes, pursuant to section 632.483.2(2), "[d]ocumentation of institutional adjustment and any treatment received or refused, including the Missouri sexual offender program[.]" The Missouri Supreme Court has made clear that "[s]ection 632.510's mention of providing 'relevant information and records' with an intent to 'protect the public' demonstrates that the SVP Act intends that a thorough assessment of an alleged offender's history and likelihood to reoffend be considered when making the case for his commitment as an SVP." In re Tyson , 249 S.W.3d 849, 853 (Mo. banc 2008). The narrow interpretation of section 632.510 proffered by Derby is inconsistent with the language and purpose of the waiver, irreconcilable with other provisions in the SVP Act permitting the use of this information by others in assessing whether an individual meets the definition of a sexually violent predator, and would inhibit the fact-finder from being presented a complete picture of the person's mental condition.
We find that the privilege waiver contained in section 632.510 permitted Dr. Griffith and Dr. Kline to rely on and testify about statements made by Derby to treatment providers. Point denied.
POINT II-DISCOVERY PRIOR TO PROBABLE CAUSE HEARING
In his second point on appeal, Derby alleges that the trial court erred and violated certain of his constitutional rights by denying his request for limited discovery prior to the probable cause hearing of the materials reviewed and relied upon by Dr. Griffith during her end-of-confinement evaluation. He specifically argues that the proceedings had commenced when the request was made; the materials sought were relevant and discoverable under Rule 56.01; the production of the material reviewed and relied upon by Dr. Griffith were essential to guarantee his rights to counsel, cross-examination, and to contest probable cause; and that the failure to grant this limited discovery request prevented him and his attorney from any meaningful effort to prepare and confront the State's evidence at the hearing.
Standard of Review
A trial court's refusal of discovery is reviewed for abuse of discretion. State v. Hawkins , 328 S.W.3d 799, 808 (Mo. App. S.D. 2010) (citation omitted). The trial court's ruling must be "clearly against the logic of the circumstances then before the court and [ ] so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." Id. (citations omitted).
Discussion
SVP proceedings begin when the State files a petition for civil commitment. Norton , 123 S.W.3d at 172. The petition in this case was filed on March 1, 2016. A probable *369 cause hearing shortly follows, which the court set for March 25. During the probable cause hearing, the person alleged to be an SVP is afforded the rights "[t]o present evidence on such person's behalf[,]" "[t]o cross-examine witnesses who testify against such person[,]" and "[t]o view and copy all petitions and reports in the court file, including the assessment of the multidisciplinary team." § 632.489.3.
On March 11, Derby's counsel emailed to the State a request to receive "the materials Dr. Griffith reviewed to make her determination" prior to the probable cause hearing. The State refused to comply with the request on the same date. Derby then filed a motion to compel discovery, stating that he requested the State to provide, inter alia , "all materials provided to [Dr. Griffith] in this case prior to [her] decision on respondent" and alleging that he could not adequately exercise his rights without access to these materials prior to the probable cause hearing. The court denied the motion but granted Derby a continuing objection.
Derby argues that section 632.489.3 does not limit discovery to only those items and further that the ability to obtain additional discovery after the probable cause hearing does not preclude some discovery from occurring before the hearing. See Tyson , 249 S.W.3d at 852-53 ("The SVP Act contemplates that additional discovery will be accomplished after the probable cause hearing."). However, we agree with the State that the statute plainly sets forth the limited discovery Derby was entitled to prior to the hearing-"all petitions and reports in the court file, including the assessment of the multidisciplinary team." § 632.489.3(4).[13]
But, this conclusion does not dispose of Derby's claim. He also argues that the trial court's refusal to compel the State to provide the requested discovery denied him a meaningful opportunity to cross-examine witnesses against him at the probable cause hearing, another right conferred under section 632.489.3, and thus that his due process rights were violated. We disagree.
Like a person alleged to be an SVP, criminal defendants are also given the rights to cross-examine witnesses and introduce evidence at a preliminary hearing. Rule 22.09(b).[14] However, these rights are granted by the Rules of Criminal Procedure and are not "part of the constitutional right to due process." State v. Aaron , 218 S.W.3d 501, 509 (Mo. App. W.D. 2007) (citations omitted). A criminal defendant is not entitled to discovery or disclosure of the State's evidence until after the preliminary hearing has been conducted. State v. Smith , 240 S.W.3d 753, 755 (Mo. App. E.D. 2007) (citation omitted).[15] Because *370 "witnesses who testify at the preliminary hearing will also be available to testify at trial[,]" it is "of no import ... whether the accused has had 'the opportunity for full and complete cross-examination' at the preliminary hearing, since that opportunity will be afforded at trial." Aaron , 218 S.W.3d at 509 (citation omitted). Rather, the criminal preliminary hearing is held merely "to determine if there is probable cause to believe that a felony has been committed and that the accused is the offender so that he may be bound over and formally charged and tried in the circuit court or discharged if probable cause is not found." State v. Turner , 353 S.W.2d 602, 604 (Mo. banc 1962) ; see also 544.250.
Similar to a criminal preliminary hearing, the right to present evidence and cross-examine witnesses at the probable cause hearing in an SVP case have been granted by the general assembly but are not rights required under the constitution.[16] § 632.489.3; cf. Aaron , 218 S.W.3d at 509 ; see also State ex rel. Walker v. Mo. State Bd. of Registration for Healing Arts , 926 S.W.2d 148, 151 (Mo. App. E.D. 1996) (noting in writ proceeding seeking to prevent board from holding probable cause hearing on physician's competency to practice medicine that "the full panoply of due process is not required" "at the probable cause stage of the proceeding"). Also, as with a criminal preliminary hearing, the purpose of the probable cause hearing is "merely to determine if the State's evidence raises a triable issue of fact." Tyson , 249 S.W.3d at 852-53 (citations omitted); cf. Turner , 353 S.W.2d at 604 ; see also 544.250. The court acts as a gatekeeper and is not allowed to "weigh evidence or make credibility determinations" but rather may only "determine if probable cause exists to believe that the alleged offender is an SVP under the definition of that term in section 632.480(5)[.]" Tyson , 249 S.W.3d at 853 (citation omitted). Thus, as with a criminal preliminary hearing, we conclude that it is "of no import ... whether the accused has had 'the opportunity for full and complete cross-examination' at the [probable cause] hearing, since that opportunity will be afforded at trial[,]" and thus that an alleged SVP's due process rights are not violated where a denial of additional discovery has allegedly not allowed him *371 the opportunity for full and complete cross-examination. Cf. Aaron , 218 S.W.3d at 509 (citation omitted).
Notably, Derby has not alleged that he was not provided the materials to which he was entitled pursuant to section 632.489.3 prior to the probable cause hearing. Because section 632.489.3 sets forth the discovery to which an alleged SVP is entitled prior to his probable cause hearing and we have concluded that an alleged SVP's due process rights are not violated by the trial court's refusal to allow additional discovery prior to the probable cause hearing, it was not an abuse of discretion to deny Derby's motion to compel discovery. See Hawkins , 328 S.W.3d at 808.
Derby's second point on appeal is denied.
POINT III-SEXUALLY VIOLENT PREDATOR DETERMINATION
In his third point on appeal, Derby alleges that the trial court erred by denying his motion for a directed verdict, denying his motion for judgment notwithstanding the verdict, and ordering his commitment to the DMH. Derby claims that the evidence was insufficient to prove that he presently suffered from pedophilic or antisocial personality disorder causing him serious difficulty controlling his sexually violent behavior such that he would presently be dangerous if released.[17]
Standard of Review
Our review is "to determine if the State made a submissible case." J.D.B. , 541 S.W.3d at 676 (citation omitted). As noted supra , the evidence and reasonable inferences therefrom are viewed "in the light most favorable to the State's case, while disregarding all contradictory evidence." Id. (citation omitted). A submissible cause for the commitment of an alleged SVP requires clear and convincing evidence of "each of the requisite elements of an SVP commitment." Id. (citation omitted).
The requisite elements for commitment are that the person: "(1) has committed a sexually violent offense; (2) suffers from a mental abnormality; and (3) this mental abnormality 'makes the person more likely than not to engage in predatory acts of violence if not confined in a secure facility.' " Kirk , 520 S.W.3d at 448-49 (quoting § 632.480(5) ). The mental abnormality must "predispose[ ] the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others[.]" § 632.480(2). Predatory acts are those "directed towards individuals, including family members, for the primary purpose of victimization[.]" § 632.480(3). Missouri courts have held that the individual must presently suffer from a mental abnormality and presently pose a danger to society if released. See, e.g. , *372 In re Murrell , 215 S.W.3d 96, 104 (Mo. banc 2007) (citations omitted).
Discussion
Although Derby refused to be interviewed by either expert, both testified that Derby currently suffered from two mental abnormalities-pedophilic disorder and antisocial personality disorder. Dr. Kline further testified that the conditions predisposed Derby to commit sexually violent acts to a degree that caused him serious difficulty in controlling his behavior. Dr. Griffith similarly testified that Derby had serious difficulty controlling his behavior and would continue to commit predatory, sexual offenses against children in the future. Even if the experts did not use the exact phrases used in the statutory definition or Missouri case law, their "opinion[s]-in context-[were] more than sufficient evidence for the jury to find the criteria in section 632.480(5) were met." Cf. Nelson , 521 S.W.3d at 234 (holding that expert opined respondent "was more likely than not to commit future 'predatory acts of sexual violence' if not securely confined even though expert did not use exact phrase).
Derby nevertheless directs us to other testimony suggesting that he does not presently suffer from these mental conditions and is not presently dangerous. Derby's argument ignores our standard of review, which requires that we disregard evidence contrary to the jury's verdict. J.D.B. , 541 S.W.3d at 676 (citation omitted). An expert's testimony that a respondent currently suffers from a mental abnormality and that the mental abnormality makes the individual more likely than not to engage in predatory acts of violence if not confined in a secure facility will support an individual's commitment to the DMH as a sexually violent predator. Cf. In re Spencer , 171 S.W.3d 813, 819-20 (Mo. App. S.D. 2005) (holding that the record was sufficient under higher beyond a reasonable doubt standard where expert testified that there was no indication of current sexual fantasies regarding children but respondent was nevertheless currently diagnosed with pedophilia by experts and more likely than not to reoffend because respondent had previously continued to sexually reoffend after being caught and had not completed sex offender treatment program). Such evidence was presented in this case through the testimony of Dr. Griffith and Dr. Kline.
Based on the evidence and the reasonable inferences therefrom, there was sufficient evidence for the jury to find that Derby was more likely than not to commit a future predatory act of sexual violence if not confined in a secure facility. Derby's point is denied.
CONCLUSION
Finding no error, the judgment of the trial court is affirmed.
All concur.

All statutory references are to the Revised Statutes of Missouri 2016 unless otherwise stated.

§§ 632.480-632.525.

The facts are viewed "in a light most favorable to the jury's verdict, disregarding all contrary evidence and inferences[.]" In re Nelson , 521 S.W.3d 229, 233 (Mo. banc 2017) (citation omitted).

Derby also admitted that he had participated in certain ceremonies outside of Boonville, Missouri. Derby's roommates reported that he engaged in sexual conduct with underage persons during these ceremonies.

Derby declined to meet with either expert for evaluation. Both experts relied primarily on Derby's records such as those from law enforcement agencies and Derby's written statements and records from treatment received during his incarceration.

Dr. Griffith testified that since completing the assessment, Derby had turned thirty-five. At this age, the risk of committing a sexual offense in the future is considered to decrease and thus would reduce Derby's score by one point.

Dr. Griffith testified that the inability to interview Derby and not having specific evidence relevant to some of the factors resulted in an understated score for Derby under this instrument.

Derby has admitted that the constitutional issues he raises have been rejected by the Missouri Supreme Court. In his Opening Brief, he acknowledges that the Missouri Supreme Court has rejected the arguments raised in his fourth Point Relied On. The Brief states that Derby raised the arguments made in his fourth Point to "preserve these issues for future federal review." Derby did not reply to the State's contention in its brief that his constitutional arguments were "recently rejected by the Missouri Supreme Court."

We further note that "there is no constitutional right to a bench trial for a criminal defendant; the Sixth Amendment, as applied to the states through the Fourteenth Amendment, only grants a criminal defendant the right to be tried by an impartial jury. " J.D.B. , 541 S.W.3d at 672-73 (emphasis added).

Derby recognizes that these issues have previously been decided by the Missouri Supreme Court but asks that this precedent not be followed. We are bound to follow the decisions of the Missouri Supreme Court. Brown , 519 S.W.3d at 853.

"The Self-Incrimination Clause of the Fifth Amendment, which applies to the States through the Fourteenth Amendment, provides that no person 'shall be compelled in any criminal case to be a witness against himself.' " Allen v. Illinois , 478 U.S. 364, 368, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986) (emphasis added) (citation omitted). The right against self-incrimination, or right to remain silent, allows "a person to refuse to testify against himself at a criminal trial in which he is a defendant" and also "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future proceedings." Id. (citations and internal quotation marks omitted).

Derby's argument is difficult to address given the brevity of his briefing on this issue. For example, Derby does not discuss the applicable equal protection analysis, how the differences would fail such an analysis, or how his alleged rights were violated in this case. Nevertheless, we must reject Derby's claim in accordance with precedent. See Brown , 519 S.W.3d at 853.

The State also claims that discovery cannot be expected prior to the probable cause hearing because the timing of the hearing is incongruent with the usual timing of discovery. Pursuant to section 632.489.2, hearings to challenge probable cause shall be held no more than seventy-two hours after a respondent is taken into custody, while discovery responses are traditionally due within thirty days of the request, Rule 57.01(c)(1); Rule 58(c)(1). We find this argument to be without merit, as the court may require a shorter time for responding. See Rule 57.01(c)(1); Rule 58.01(c)(1).

All Rule citations are to the applicable Missouri Rules of Criminal or Civil Procedure 2017 unless otherwise noted.

"Felony proceedings may be initiated by complaint or by indictment." Rule 22.01. After the filing of a felony complaint or indictment, "a preliminary hearing shall be held within a reasonable time." Rule 22.09(a). "If the judge finds probable cause ... the judge shall order the defendant to appear and answer to the charge[.]" Rule 22.09(b). "An information charging a felony shall be filed not later than ten days after the date of the order requiring the defendant to answer the charge ..." Rule 23.03. "Discovery may commence upon the filing of the indictment or information." Rule 25.02. These rules have collectively been interpreted so that the defendant is entitled to disclosure of evidence "only after the preliminary hearing has been conducted[.]" Aaron , 218 S.W.3d at 508-09.
Effective July 1, 2018, however, Rule 25.02 will be amended to read as follows:
(a) Disclosure on filing of felony complaint. Requests or motions for discovery of material and information as provided in Rule 25.03(a) may be made any time after defendant's initial appearance in court ...
(b) Disclosure after indictment or filing of information. Except as provided in paragraph (a), upon the filing of an indictment or information discovery may commence. Requests or motions for discovery may be made after the filing of the indictment or information...

Typically, a person committed as an SVP alleges on appeal that he is entitled to certain rights afforded to criminal defendants. In fact, Derby has relied on this very claim throughout his appeal, yet argues in this point that "attempts to equate the probable cause proceedings under the SVP Act with probable cause proceedings in criminal matters ... are unpersuasive [ ] because it is clear that SVP Act proceedings are civil in nature." See Tyson , 249 S.W.3d at 853 (citation omitted). In Tyson , the Missouri Supreme Court held only that a sexual offender could not seek to establish additional rights in SVP probable cause hearings by drawing on the procedures applicable in criminal preliminary hearings. See id. Although we agree that these proceedings are not criminal, we do find a review of the law regarding criminal preliminary hearings, in the absence of other guidance, instructive to our analysis.

Derby's sufficiency of the evidence argument appears to be a guise for a challenge to the factual or scientific foundation of the experts' testimony.
If a question exists as to whether the proffered opinion testimony of an expert is supported by a sufficient factual or scientific foundation, the question is one of admissibility. It must be raised by a timely objection or motion to strike.
Once opinion testimony has been admitted, as any other evidence, it may be relied upon for purposes of determining the submissibility of the case. The natural probative effect of this testimony is a consideration for the jury.
In re Mitchell , 544 S.W.3d 250, 257 (Mo. App. S.D. 2017) (citations omitted). Derby did not object to the admission of Dr. Kline and Dr. Griffith's opinion testimony on the basis of a lack of sufficient factual or scientific foundation at trial, and the weight to be given to the testimony was a consideration for the jury.