

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| IN THE MATTER OF THE CARE AND TREATMENT OF ERIC HELM A/K/A ERIC T. HELM A/K/A ERIC THOMAS HELM, | ) ) ) ) ) | WD85477 |
| Appellant, | ) ) | OPINION FILED: DECEMBER 12, 2023 |
| v. | ) ) | |
| STATE OF MISSOURI, | ) ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Clay County, Missouri**
The Honorable David P. Chamberlain, Judge

Before Division Three:  Lisa White Hardwick, Presiding Judge, Karen King Mitchell, Judge and Cynthia L. Martin, Judge

Eric Helm ("Helm") appeals from the trial court's judgment finding him to be a sexually violent predator ("SVP") and committing Helm to the custody of the Missouri Department of Mental Health.  Helm asserts that the trial court abused its discretion in admitting documents from his parole file and in allowing his parole officer to testify about her supervision of Helm.  Helm also claims that he received ineffective assistance

of counsel because trial counsel failed to object to his parole officer's opinions about Helm's risk to the community. Finding no error, we affirm.

## Factual and Procedural Background

Helm pleaded guilty to one count of sodomy in July 1993 and was sentenced to twenty-five years' incarceration in the Missouri Department of Corrections. In anticipation of his release from the Department of Corrections, the State filed a petition alleging Helm to be an SVP pursuant to the sexually violent predator act ("SVP Act")[1] on June 29, 2017. An SVP is "any person who suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility and who . . . [h]as pled guilty or been found guilty in this state or any other jurisdiction . . . of a sexually violent offense." Section 632.480(5)(a). Sodomy is a sexually violent offense. *See* section 632.480(4). After a two-day trial, a jury returned a verdict finding that Helm is an SVP, and the trial court entered a judgment in accordance with the jury's verdict. Helm does not challenge that the evidence admitted at trial supports the conclusion that he is an SVP. Viewed in the light most favorable to the jury's verdict,[2] that evidence was as follows:

In March 1986, Helm was alone with a nine-year-old girl ("Victim 1") in his car. Helm exposed his penis to Victim 1 and then told her to climb on his lap. Victim 1 sat on

---

[1]Sections 632.480-632.525. All statutory references are to RSMo 2016, as supplemented through June 29, 2017, unless otherwise indicated.
[2]We view the facts in the light most favorable to the jury's verdict, disregarding all contrary evidence and inferences drawn therefrom. *In re Care & Treatment of Derby v. State*, 557 S.W.3d 355, 359 n.3 (Mo. App. W.D. 2018).

Helm's lap, facing the same direction as Helm so that her back was against his chest. Helm touched Victim 1's chest and asked her to touch his penis by "working it up and down." Helm then rubbed his penis on Victim 1's genitals. Victim 1's older sister approached the car and saw Helm zipping up his pants but did not see Victim 1 in the car and then went back inside the home. Helm's sexual touching of Victim 1 resumed. Victim 1's mother realized that Victim 1 was still outside, and asked Victim 1's older sister to go outside to get her. Victim 1's sister then saw Victim 1 in the vehicle with Helm. When police officers interviewed Helm in connection with this incident, Helm said, "young girls do turn me on sexually" and told the police that Victim 1 "does things sexual to try to turn me on." Helm explained that, when he refers to "young girls," he means girls fifteen and younger. Helm received probation for this offense.[3]

Almost immediately following the March 1986 offense, Helm sought mental health treatment. Helm spoke about his behavior during treatment, characterizing himself as "a timebomb, waiting to explode" and remarking that he was "getting really scared about what [he] might do" and that "the temptations are getting stronger." Helm was ultimately discharged from the mental health treatment facility for engaging in "sexually inappropriate behavior" with women in treatment at the facility.

Six years later, in the summer of 1992, police received reports that Helm was loitering at a playground. A few days after the school year ended, Helm began spending every day at the playground and would be there from "sun-up to sundown." According to

---

[3]The record on appeal does not indicate the specific crime of which Helm was charged and convicted in connection with this offense.

two girls, ages nine and ten, who were interviewed by police about Helm's presence at the playground, Helm wore very short shorts with no underwear so that his genitals were exposed and spoke with children about sexual acts. When children confronted Helm about what he was wearing, Helm acted like it was "no big deal" not to wear underwear. Helm was not convicted of any crimes in connection with this behavior.

In August 1992, Helm victimized two other girls, a six-year-old girl ("Victim 2") and a four-year-old girl ("Victim 3"). Victim 2's mother witnessed Helm touch Victim 2's genitals while Victim 2 was in a tent with Helm, and witnessed Victim 2 touching Helm's genitals. Victim 2 reported to police that Helm touched her "right in the privates" and that "he wouldn't quit." Victim 2 stated that Helm touched her genitals more than five times. On at least one of those occasions, Victim 2 was wearing a bathing suit, and Helm stuck his finger into Victim 2's bathing suit and felt her genitals. With respect to Victim 3, Helm "pinched her on the arm, bit her on the back and touched . . . her privates" on four occasions. Victim 3 reported to police that she told Helm to stop, but he refused. Helm pleaded guilty to sodomy for his actions with Victim 2 and was sentenced to twenty-five years' incarceration, but Helm was not convicted of any crimes for his actions with Victim 3.

There were no reports of Helm engaging in any sexually inappropriate behavior during the first eleven years of his incarceration. However, in 2004, Helm received a conduct violation for having "copious amounts of inappropriate drawings" that depicted nude or partially clothed prepubescent girls in sexually explicit poses. Helm received conduct violations for possessing these types of drawings in 2004, 2005, 2006, and 2007.

4

In January 2008, Helm began attending the Missouri Sex Offender Treatment Program ("MOSOP") within the Department of Corrections.[4]  Successful completion of the MOSOP program renders an offender eligible for consideration for early release.[5]  In February 2008, Helm was once again found to have drawings of nude children in his possession.  Nevertheless, Helm completed the first phase of MOSOP in May 2008.  In July 2008 and March 2009, Helm once again possessed drawings of nude children.  Helm eventually began the second phase of MOSOP during which participants receive treatment tailored to their individual risk factors.  Each participant learns about the "sexual deviant cycle," including the participant's triggers, how to remove themselves from a triggering situation, and how to prevent themselves from acting on their deviant sexual interest.

During the second phase, Helm was confronted by fellow offenders attending MOSOP on two occasions.  A fellow offender confronted Helm about continuing to possess drawings of nude children.  Helm had given another offender a cookbook, and the fellow offender found several drawings of nude females in the cookbook.  During the confrontation, Helm maintained that he had tried to erase the drawings several years earlier in an attempt to reuse the paper and did not realize that the drawings were still

---

[4]MOSOP is a "program of treatment, education, and rehabilitation for all imprisoned offenders who are serving sentences for sexual assault offenses," the goal of which is "the prevention of future sexual assaults by the participants in such programs." Section 589.040.1.

[5]*See* section 589.040.2 ("All persons imprisoned by the department of corrections for sexual assault offenses shall be required to successfully complete [MOSOP] prior to being eligible for parole or conditional release.").

visible on the paper.  Helm later attempted to flush the drawings down the toilet.  On another occasion, fellow offenders confronted Helm about "objectifying" an underage female who was on television, requiring the fellow offenders to turn the television off so that Helm would stop.

Despite these reports, Helm completed MOSOP in September 2010.  In August 2012, Helm received a conditional release from prison.  The Department of Corrections placed Helm on parole and sent Helm to the Kansas City Conditional Release Center, where he lived for five months while being supervised by a parole officer.  Helm failed to meet several conditions of his parole, including obtaining a job and entering a sex offender treatment program.  Moreover, Helm's parole officer observed Helm loitering in a park with other sex offenders.  In January 2013, while still on parole, Helm was found to have over 120 drawings of nude or partially clothed children, consistent with the drawings Helm possessed while incarcerated.

Helm's parole was revoked in 2013, and he was returned to the Department of Corrections.  In July 2017, while incarcerated and while the State's petition in the instant case was pending, Helm was found with additional nude drawings of children.

A jury trial was held in February 2022.  A certified forensic examiner and psychologist employed by the Missouri Department of Mental Health ("certified forensic examiner") testified about her SVP evaluation of Helm.  The certified forensic examiner reviewed at least 5,000 pages of records relating to Helm, interviewed Helm, and

6

evaluated Helm's risk for reoffending based on actuarial assessment tools.[6] The certified forensic examiner concluded based on a reasonable degree of psychological certainty that Helm suffers from a "mental abnormality,"[7] namely pedophilic disorder, that renders him more likely than not to engage in a predatory act of sexual violence so that he must be confined to a secure facility.

During the certified forensic examiner's testimony, the State offered twenty drawings that were confiscated from Helm during either his incarceration in the Department of Corrections or while he was at the Kansas City Conditional Release Center. Prior to offering the drawings into evidence and anticipating objections from Helm, the State approached the bench. The State informed the trial court that the twenty drawings it would be seeking to enter into evidence were business records that were part of either Helm's Department of Corrections file or Helm's probation and parole file, and that Helm admitted that he either drew the twenty drawings or that they were in his possession during a search of his belongings. Helm objected to admission of the drawings that were a part of his probation and parole file. He argued that section 559.125 renders all information and data obtained by a parole officer privileged and not admissible in any court. The trial court overruled the objection, reasoning that section 632.510, as construed by *In re Care & Treatment of Derby v. State*, 557 S.W.3d 355 (Mo.

---

[6]The actuarial assessments tools used by the certified forensic examiner were the Static-99R, the Static-2002R, and the Stable-2007.

[7]A "mental abnormality" is "a congenital or acquired condition affecting the emotional or volitional capacity which predisposes the person to commit sexually violent offenses in a degree constituting such person a menace to the health and safety of others." Section 632.480(2).

7

App. W.D. 2018), creates an exception to the privilege described in section 559.125. Accordingly, the drawings were admitted into evidence.

Helm's parole officer testified at trial. Helm's parole officer testified that she holds a bachelor's degree in social psychology, a master's degree in communication, and a "partial doctorate" in psychology; that she has published a book in the field of criminology, particularly case studies of various offenders, including sex offenders; and she has worked as a probation and parole officer for the Missouri Department of Corrections for over twenty years, including eight to ten years in the sex offender unit. Helm's parole officer testified that she has provided testimony in approximately four or five SVP proceedings.

At that point, and before the parole officer was asked any specific questions about Helm, Helm objected to the parole officer's testimony, once again arguing that section 559.125 rendered her anticipated testimony about Helm's conduct while on parole privileged and inadmissible. Helm also argued that pursuant to section 549.500, all documents prepared and data obtained by a parole officer during supervision of an offender are privileged and cannot be directly or indirectly disclosed to anyone. The trial court again overruled Helm's objection. Helm's parole officer proceeded to testify about Helm's behavior while on parole, and specifically about his noncompliance with the terms of his parole.

Helm's parole officer also testified about Helm's risk to the safety and security of the community:

Research shows, and it's just based on my experience, that if you're not compliant with your conditions [of parole], you're at a higher [risk] to violate those conditions and create victims if you're a sex offender or a violent offender.

. . . .

. . . I monitored his employment because employment is a big component of success if you're a sex offender, so that you can remain stable in the community.

. . . I was becoming increasingly concerned that [Helm] posed a safety risk to the community by refusing to get employment, refusing to comply with the conditions such as mental health treatment. . . .

. . . .

[After 200 drawings were confiscated while Helm was on parole,] I had him taken immediately into custody . . . because at that time he's fantasizing about his victims, not going to mental health treatment, not going to sex offender treatment, drawing pictures of small children in various stages of undress, performing sexually acts. And I knew he was an imminent risk to the safety and security of the community. . . .

. . . .

In the final end, [Helm] posed an [imminent] risk to the safety and security of the community because he refused to get employment, he refused to go to sex offender treatment, although the state would provide it, the funding. He refused to take mental health medication or go to mental health appointments and meet with a psychiatrist. He refused even to seek employment or go to the resources that I requested him to go. . . . But at the end, he just posed a risk to the safety and security of the community, especially as he was fantasizing about drawing children.

Although Helm's attorney had objected generally at the beginning of the parole officer's testimony on the basis that statutory privileges prohibited the parole officer from disclosing information obtained during her supervision of Helm's parole, Helm's attorney did not further object to the parole officer's testimony involving opinions or impressions that Helm posed a risk to the community.

9

Helm presented the testimony of his pastor about Helm's religious journey and the testimony of a competing expert witness as to Helm's risk of reoffending. After deliberating for 90 minutes, the jury returned its verdict finding that Helm is an SVP.

The trial court entered its written judgment and commitment order ("Judgment") on February 16, 2022. The Judgment determined that Helm is a sexually violent predator, and ordered him to be kept in a secure facility and "committed to the custody of the director of the Department of Mental Health for control, care and treatment until such time as [Helm's] mental abnormality has so changed that he is safe to be at large."

Helm filed a timely motion for judgment notwithstanding the verdict or, in the alternative, motion for new trial ("motion for new trial"). The motion for new trial asserted that the trial court committed error in admitting drawings from Helm's probation and parole file, and in allowing Helm's parole officer to testify, because that evidence and testimony was privileged and inadmissible pursuant to sections 559.125 and 549.500. The trial court denied the motion for new trial.

Helm appeals.

## Analysis

Helm presents three points on appeal. Helm's first point on appeal challenges the trial court's admission of drawings confiscated from Helm while he was on parole. Helm's second point on appeal challenges the trial court's admission of his parole officer's testimony regarding her supervision of Helm while on parole. Helm's final point on appeal asserts that he received ineffective assistance of counsel because trial counsel

10

failed to object when his parole officer testified about her opinion that Helm presented a risk to the community because it was not proper expert testimony.

### Points One and Two: The Trial Court Did Not Err in Admitting Drawings and Testimony Gathered During or Related to Helm's Parole

Helm's first and second points on appeal are addressed together because they collectively challenge the admission of drawings and testimony relating to Helm's time on parole on the basis that such evidence is privileged and inadmissible pursuant to sections 549.500 and 559.125.2.[8]

The trial court enjoys "considerable discretion" in the decision to admit or exclude evidence. *In re Care & Treatment of Ballard*, 667 S.W.3d 219, 222 (Mo. App. S.D. 2023). Accordingly, we review the trial court's decision to admit evidence for abuse of

---

[8]Though twenty drawings were admitted at trial, some were confiscated from Helm when he was incarcerated at the Department of Corrections. Helm did not object at trial, and does not claim on appeal, that the drawings confiscated during his incarceration were privileged or inadmissible. Yet, in his first point on appeal, Helm makes no effort to identify which, or how many, of the twenty admitted drawings he claims were privileged and inadmissible because they were confiscated while he was on parole. On that basis alone, we could deny the first point on appeal, as Helm has not crafted a point relied on that "[i]dentif[ies] the trial court ruling or action that the appellant challenges" as required by Rule 84.04(d)(1). Moreover, Helm's lack of specificity results in a fatal defect in Helm's contention that "drawings" in his probation and parole file where erroneously admitted to his prejudice. At worst, the drawings in Helm's probation and parole file were cumulative of admissible drawings confiscated while Helm was incarcerated, and of substantial other testimonial evidence about incidents where similar drawings had been found in Helm's possession over the years during his incarceration. "A party cannot be prejudiced by the admission of allegedly inadmissible evidence if the challenged evidence is merely cumulative to other evidence admitted without objection." *Linton by & through Linton v. Carter*, 634 S.W.3d 623, 630 (Mo. banc 2021) (quoting *Swartz v. Gale Webb Transp. Co.*, 215 S.W.3d 127, 134 (Mo. banc 2007)).

All Rule references are to Missouri Supreme Court Rules (2023), unless otherwise indicated.

11

discretion. *Id.* A trial court abuses its discretion when its "ruling is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Id.* (quoting *In re Care & Treatment of Stiles*, 662 S.W.3d 322, 331 (Mo. App. S.D. 2023)). Moreover, reversal is only appropriate if the trial court's error "materially affected the merits of the action." *Id.* (quoting *In re Care & Treatment of Stiles*, 662 S.W.3d at 331).

Helm correctly observes that sections 549.500 and 559.125.2 create a privilege protecting against the disclosure of parole records, information, and data. Section 549.500 provides:

> All documents prepared or obtained in the discharge of official duties by any member or employee of the board of probation and parole shall be privileged and shall not be disclosed directly or indirectly to anyone other than members of the board and other authorized employees of the department [of corrections] pursuant to section 217.075.[9] The board may at its discretion permit the inspection of the report or parts thereof by the offender or his attorney or other persons having a proper interest therein.

Section 559.125.2 provides:

> Information and data obtained by a probation or parole officer shall be privileged information and shall not be receivable in any court. Such information shall not be disclosed directly or indirectly to anyone other than the members of the parole board and the judge entitled to receive reports, except the court or the board may in its discretion permit the inspection of the report, or parts of such report, by the defendant, or offender, or his or her attorney or other person having a proper interest therein.

---

[9]Section 217.075 declares offender records as public records and then sets forth exceptions, none of which are relevant in the instant case.

However, section 632.510 describes an exception to these (and other) statutory privileges that is applicable to SVP proceedings. It states:

> In order to protect the public, relevant information and records which are otherwise confidential or privileged shall be released to the . . . attorney general for the purpose of meeting the notice requirement provided in section 632.483 or 632.484 and determining whether a person is or continues to be a sexually violent predator.

Section 632.510.

Helm acknowledges that section 632.510 permits documents and information that is otherwise privileged pursuant to sections 549.500 and 559.125.2 to be released to the attorney general for the purpose of determining whether a person is an SVP, but asserts that the exception does not contemplate the admission of privileged documents, information, or data into evidence during an SVP proceeding. An indistinguishable argument was raised and rejected in *In re Care & Treatment of Derby v. State*, 557 S.W.3d 355 (Mo. App. W.D. 2018).

In *In re Care & Treatment of Derby*, two expert witnesses testified that Derby met the statutory definition of an SVP, and in doing so, relied on and testified about statements Derby made to treatment providers. *Id.* at 360, 367. Derby claimed that statements he made to treatment providers were privileged pursuant to section 337.540,[10]

_____

[10]Section 337.540 provides, "[a]ny communication made by any person to a licensed professional counselor in the course of professional services rendered by the licensed professional counselor shall be deemed a privileged communication." The statutory definition of licensed professional counselor encompasses "any person who offers to render professional counseling services to individuals, groups, organizations, institutions, corporations, government agencies or the general public for a fee, monetary or otherwise, implying that the person is trained, experienced, and licensed in counseling, and who holds a current, valid license to practice counseling." Section 337.500(5).

13

and that the statements were thus inadmissible during the SVP trial because, although the exception created by section 632.510 permits the release of privileged or confidential information and records to the attorney general, the exception does not extend to admission of the privileged or confidential information and records in an SVP trial. *Id.* at 367-68. We soundly rejected this argued interpretation of section 632.510. We explained:

> Derby's strained interpretation of section 632.510 is inconsistent with its plain language, which specifically permits otherwise privileged information and records to be used "for the purpose of . . . determining whether a person is or continues to be a sexually violent predator." Moreover, section 632.489.4 provides that the psychiatrist or psychologist conducting an examination "shall have access to all materials provided to and considered by the multidisciplinary team[,]" which includes, pursuant to section 632.483.2(2), "[d]ocumentation of institutional adjustment and any treatment received or refused, including the Missouri sexual offender program[.]" The Missouri Supreme Court has made clear that "[s]ection 632.510's mention of providing 'relevant information and records' with an intent to 'protect the public' demonstrates that the SVP Act intends that a thorough assessment of an alleged offender's history and likelihood to reoffend be considered when making the case for his commitment as an SVP." *In re Tyson*, 249 S.W.3d 849, 853 (Mo. banc 2008). The narrow interpretation of section 632.510 proffered by Derby is inconsistent with the language and purpose of the waiver, irreconcilable with other provisions in the SVP Act permitting the use of this information by others in assessing whether an individual meets the definition of a sexually violent predator, and would inhibit the fact-finder from being presented a complete picture of the person's mental condition.

*Id.* at 368.

*In re Care & Treatment of Derby* is controlling here. Helm nonetheless attempts to distinguish *In re Care & Treatment of Derby* by arguing that "[section] 559.125.2 contains more specific language than [section] 337.540" because section 559.125.2 provides that information and data obtained by a parole officer is both privileged ***and*** not

14

receivable in court, whereas section 337.540 merely provides that communications with a licensed professional counselor are privileged. [Appellant's Brief, p. 24]

This is a distinction without meaning or import. This court's conclusion that the exception to statutory privileges for SVP proceedings described in section 632.510 plainly authorizes the admission of otherwise privileged or confidential evidence in an SVP trial was neither controlled nor limited by statutory language creating or describing the underlying privilege. Instead, the conclusion reached in *In re Care & Treatment of Derby* was controlled by the rule of statutory construction which required this court to "ascertain the intent of the legislature from the language used [in section 632.510], . . . giv[ing] effect to the intent if possible, and . . . consider[ing] the words in their plain and ordinary meaning." *In re of Care & Treatment of Derby*, 557 S.W.3d at 368 (quoting *In re of Care & Treatment of Norton*, 123 S.W.3d 170, 172 (Mo. banc 2003)). It is thus immaterial that section 337.540 and section 559.125.2 use different language to describe the extent of the statutory privilege therein created. Regardless, the exception set forth in section 632.510 permits otherwise privileged or confidential information to be admitted into evidence during an SVP trial.

Accordingly, the trial court did not abuse its discretion in admitting into evidence drawings confiscated from Helm while he was on parole, or in permitting testimony from Helm's parole officer about her supervision of Helm while he was on parole.

Helm's first and second points on appeal are denied.

***Point Three: Helm Has Failed to Demonstrate That He Received Ineffective Assistance of Counsel***

Helm's third point on appeal asserts that he received ineffective assistance of counsel because trial counsel failed to object to his parole officer's opinion testimony that Helm posed a risk to the community. Helm asserts that a reasonably competent attorney would have objected to the parole officer's testimony because she was not properly qualified as an expert witness to opine about an ultimate issue in the case, and because her opinion was not based on well recognized standards. Helm requests that we either reverse and remand for a new trial, or remand for an evidentiary hearing to further develop the facts regarding his claim of ineffective assistance of counsel.

The SVP Act gives an offender alleged to be an SVP the right to counsel. *See* section 632.489.3(1) (providing that the offender has a right to be represented by counsel at a hearing to determine whether probable cause exists to believe that the person named in the petition is an SVP); section 632.492 (providing that an offender accused of being an SVP has a right to counsel "[a]t all stages of the proceedings," and that if an offender is indigent, "the court shall appoint counsel to assist" the offender). Moreover, our Supreme Court has consistently held that "civil commitment in SVP proceedings impinges on the SVP's fundamental liberty interest and so is protected by due process." *In re Care & Treatment of Grado v. State*, 559 S.W.3d 888, 895 (Mo. banc 2018) (citing *In re Care & Treatment of Coffman*, 225 S.W.3d 439, 445 (Mo. banc 2007); *In re Treatment & Care of Bernat v. State*, 194 S.W.3d 863, 868 (Mo. banc 2006); *In re Care & Treatment of Norton*, 123 S.W.3d 170, 173 (Mo. banc 2003)). *In re Care & Treatment*

16

*of Grado* recognized that "an SVP's due process right to counsel in SVP proceedings would be hollow were there no accompanying requirement counsel be effective."  559 S.W.3d at 896.

While the right to counsel in SVP proceedings is statutorily guaranteed and is protected by due process, the SVP Act does not describe a mechanism for an offender to assert that he was deprived of the right to effective assistance of counsel.  *In re Care & Treatment of Haggerman v. State*, 637 S.W.3d 697, 700 (Mo. App. W.D. 2021).  Accordingly, *In re Care & Treatment of Grado* held that an SVP may raise a claim of ineffective assistance of counsel on direct appeal from the SVP proceeding if the "alleged errors can be determined through review of the appellate record."  559 S.W.3d at 898.  *In re Care & Treatment of Grado* did not, however, decide the proper analytical framework for evaluating claims of ineffective assistance of counsel in an SVP proceeding, and instead concluded that this issue "must be left for another day" because, in that case, the offender would not have been entitled to relief under either a "meaningful hearing" or *Strickland*[11] standard.  *Id.*  Accordingly, Missouri courts analyze claims of ineffective assistance of counsel in SVP proceedings pursuant to two possible standards: the meaningful hearing standard used in termination of parental rights proceedings and the *Strickland* standard employed in post-conviction proceedings.  *In re Care & Treatment of D.N.*, 598 S.W.3d 108, 121 (Mo. banc 2020).  Before doing so, however, our courts must first determine that the claim raised may be determined based on the appellate record, or

---

[11] *Strickland v. Washington*, 466 U.S. 668 (1984).

whether remand for an evidentiary hearing is required because the appellate record is insufficient to determine the merits of the claim. *In re Care & Treatment of Haggerman,* 637 S.W.3d at 701.

Helm claims that he did not receive a "full and fair trial with the meaningful opportunity to be heard because the ultimate issue was tainted and distorted by an incorrect standard" used by his parole officer--her personal experience.[12] [Appellant's Brief, p. 36] Helm asserts that section 490.065, which governs the admissibility of expert testimony in all proceedings before the probate division,[13] does not allow expert testimony as to the ultimate issue in an SVP proceeding to be based on personal experience. Helm claims that his parole officer's testimony led the jury "to believe that drawing inappropriate pictures created an 'imminent' risk that [he] would commit another sexually violent offense." [Appellant's Brief, p. 36]

Helm's claim of ineffective assistance of counsel is of a nature that can be determined on our present record without remanding for an evidentiary hearing. We thus address the merit of Helm's ineffective assistance of counsel claim employing both of the potentially applicable standards for doing so.

"Under a meaningful hearing standard, the 'meaningful hearing' is not evaluated on a step-by-step basis but instead represents meaningful opportunity to participate and be heard in the entire judicial process." *In re Care & Treatment of D.N.*, 598 S.W.3d at 122;

---

[12] For the purpose of resolving this point on appeal, we need not decide whether Helm's parole officer was testifying as a fact witness or as an expert witness.

[13] Section 632.486 provides that an SVP petition may be filed "in the probate division of the circuit court in which the person was convicted."

*see also In re Care & Treatment of Haggerman*, 637 S.W.3d at 701-02 ("A review of the record reveals that [the offender] is not entitled to relief under the 'meaningful hearing' standard, as he plainly received a meaningful hearing, despite his waiver of a jury trial. [The offender] received a full and fair trial, wherein the State presented the evidence supporting its petition for civil commitment, and [the offender's] counsel cross-examined the State's witnesses and presented evidence on [the offender's] behalf, including [the offender's] own testimony.").  Here, Helm's counsel was an active participant before, during, and after trial in that his counsel filed pretrial motions; objected to testimony and evidence, including the parole officer's testimony regarding her supervision of Helm while on parole; cross-examined the State's witnesses, including the parole officer; presented evidence on Helm's behalf; and filed a motion for new trial.  While Helm's trial attorney did not raise the specific objection about which Helm now complains, it cannot be said that this "failure" deprived Helm of a meaningful hearing.  *See In re Care & Treatment of D.N.*, 598 S.W.3d at 122 (holding that "[o]n the entirety of the proceeding, any failure by counsel to object to the qualifications of the end-of-confinement report author did not deprive [o]ffender of a meaningful hearing").  That conclusion is particularly appropriate given that the jury heard unopposed testimony from the certified forensic examiner that Helm's drawings of nude and partially clothed children constituted "putting [himself] into a place" to commit another offense against a child and thus the drawings were part of Helm's deviant sexual cycle.  Helm's parole officer's testimony, even if presumed to have been offered as expert testimony, was merely cumulative of

19

other evidence admitted without objection at trial, and did not deprive Helm of a meaningful hearing.

Helm's claim of ineffective assistance of counsel fails under the *Strickland* standard for the same reason. The *Strickland* standard, which is used in criminal post-conviction proceedings, requires an offender to show by a preponderance of the evidence that "(1) his or her counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation, and (2) he or she was prejudiced by that failure." *In re Care & Treatment of Grado*, 559 S.W.3d at 898 (quoting *Mallow v. State*, 439 S.W.3d 764, 768-69 (Mo. banc 2014)). The *Strickland* standard thus requires proof both that counsel's performance was deficient *and* that, but for counsel's deficient performance, the result of the proceeding would have been different. *In re Care & Treatment of Grado*, 559 S.W.3d at 898. The failure to prove either prong is fatal to a claim of ineffective assistance of counsel. *See C.R.B. v. Juv. Officer*, 673 S.W.3d 135, 140 (Mo. App. W.D. 2023) (recognizing that, in a claim of ineffective assistance of counsel in juvenile certification proceedings, if the juvenile fails to demonstrate the prejudice prong, there is no need to address the performance prong because the juvenile's claim fails).

Helm asserts that "[t]here is a reasonable probability that if [his] counsel would have objected, then [he] would not be found to be a sexually violent predator" because the suggestion of the parole officer's testimony was that if she "had not stopped him [after Helm was discovered to have drawings of children in various stages of undress], . . . Helm would have offended again." [Appellant's Brief, p. 36] This assertion ignores the

20

certified forensic examiner's testimony regarding the drawings, and her testimony that, to a reasonable degree of psychological certainty, Helm met the statutory definition of an SVP in that he has a mental abnormality that renders Helm more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility. The testimony from Helm's parole officer regarding his likelihood of reoffending was at best cumulative. Under *Strickland*, "[c]ounsel's failure to object to cumulative evidence, even where the trial court would have sustained the objection, does not result in prejudice." *Hendricks v. State*, 663 S.W.3d 875, 889 (Mo. App. E.D. 2023) (quoting *Lusk v. State*, 655 S.W.3d 230, 238 (Mo. App. E.D. 2022)).

The record demonstrates that Helm's claim that he received ineffective assistance of counsel is without merit.

Helm's third point on appeal is denied.

## Conclusion

The Judgment is affirmed.

_____
Cynthia L. Martin, Judge

All concur

21